**R. B. JARTS, INC., Petitioner,**

**v.**

**Elliot L. RICHARDSON, Secretary of the Department of Health, Education and Welfare and Charles C. Edwards, Commissioner of the Food and Drug Administration, Respondents.**

**No. 622, Docket 35802.**

United States Court of Appeals, Second Circuit.

Submitted Dec. 22, 1970.

Decided Jan. 19, 1971.

\*     \*     \*     \*     \*

John J. Sheehy, New York City (Royall, Koegel & Wells, Joseph H. Spain, New York City, and H. Wayne Judge, Glens Falls, of counsel), for petitioner.

Richard S. Toder, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. for the Southern District of New York, Yale L. Rosenberg, Asst. U. S. Atty., William W. Goodrich, Asst. General Counsel, U. S. Department of Health, Education and Welfare, Washington, D. C., and Joanne S. Sisk, Atty., U. S. Department of Health, Education and Welfare, Washington, D. C., of counsel), for respondents.

Before MEDINA, FRIENDLY and FEINBERG, Circuit Judges.

FRIENDLY, Circuit Judge:

Petitioner, R. B. Jarts, Inc., is a South Glens Falls, N. Y., manufacturer whose sole business is the production of plastic-finned lawn darts and related equipment, which it promotes and sells throughout the United States and Canada. Late in the afternoon of Friday, December 18, 1970, it sought a stay, pending judicial review, of a portion of a Regulation of the Deputy Commissioner of Food and Drugs, filed that day to become effective on the next, when it was published in the Federal Register, 35 F.R. 19266. As petitioner alleged, the Regulation would have had the effect of immediately prohibiting the sale of its product.[1] With the Government's consent the writer stayed the effectiveness of the Regulation as regards petitioner

until December 22, 1970, so that the motion could be considered by a panel. After studying the briefs of the parties and hearing argument on the motion, we continued the stay pending determination of the petition to review but directed that this be submitted for decision on further briefs, to be filed on January 5, 1971.

The Deputy Commissioner promulgated the Regulation here at issue, under delegation from the Secretary of Health, Education and Welfare, 21 C.F.R. §§ 2.-120(a), 2.121(a), pursuant to the Child Protection and Toy Safety Act of 1969, 83 Stat. 187. This statute constitutes the third and latest development in general federal control of the distribution of "hazardous substances" in interstate commerce. The first step was taken by the Federal Hazardous Substances Labeling Act of July 12, 1960, 74 Stat. 372, 15 U.S.C. §§ 1261–1273. The scheme of that Act was first to define, in 15 U.S.C. § 1261(f) (1), three categories of "hazardous substances,"[2] and then to prohibit their receipt and delivery in interstate commerce if "misbranded," 15 U.S.C. § 1263, i. e., if they did not carry an appropriate warning label. 15 U.S.C. § 1261(p). The second step was taken in the Child Protection Act of November 3, 1966, 80 Stat. 1303. This statute introduced the concept of a "banned haz-

---

1. Even though the Regulations did not constitute an absolute ban on the continued sale and distribution of petitioner's product, see *infra*, compliance with the conditions under which future sale and distribution were permitted would very likely have required at least a week, as petitioner alleged.

2. With exceptions not here material these were:
   (1) (A) Any substance or mixture of substances which (i) is toxic, (ii) is corrosive, (iii) is an irritant, (iv) is a strong sensitizer, (v) is flammable, or (vi) generates pressure through decomposition, heat, or other means, if such substance or mixture of substances may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use,

including reasonably foreseeable ingestion by children.
   (B) Any substances which the Secretary by regulation finds, pursuant to the provisions of section 1262(a) of this title, meet the requirements of subparagraph (1) (A) of this paragraph.
   (C) Any radioactive substance, if, with respect to such substance as used in a particular class of article or as packaged, the Secretary determines by regulation that the substance is sufficiently hazardous to require labeling in accordance with this chapter in order to protect the public health.
Section 1262(a) provided that in making regulations the Secretary must follow the procedure set forth in § 701(e) of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 371(e), which requires an evidentiary hearing if objection is made to a proposed regulation.

ardous substance" [3] which could not be introduced into or received from the stream of interstate commerce at all. As will be seen from the definition set forth in the margin, the Act drew a sharp distinction between a "toy, or other article intended for use by children, which is a hazardous substance, or which bears or contains a hazardous substance in such manner as to be susceptible of access by a child to whom such toy or other article is entrusted" and hazardous substances for household use. The former were banned automatically subject to the two exceptions stated in the proviso; the latter were banned only if the Secretary first found that cautionary labelling would not suffice to reduce the danger to acceptable limits.

A year later Congress created a National Commission on Product Safety, 81 Stat. 466 (1967), to "conduct a comprehensive study and investigation of the scope and adequacy of measures now employed to protect consumers against unreasonable risk of injuries which may be caused by hazardous household products" and to report to the President and the Congress thereon. The Commission's Interim Report found the existing laws were inadequate, particularly in respect of toys, some of which were found to be dangerous although they did not contain "hazardous substances" as defined in the 1960 Act, and recommended remedial legislation.[4]

In response to this report Congress adopted the Child Protection and Toy Safety Act of 1969. The 1969 statute added to 15 U.S.C. § 1261(f) (1) a fourth category of "hazardous substance," to wit:

(D) Any toy or other article intended for use by children which the Sec-

---

3. This was defined as follows, 15 U.S.C. § 1261(q) (1):

The term "banned hazardous substance" means (A) any toy, or other article intended for use by children, which is a hazardous substance, or which bears or contains a hazardous substance in such manner as to be susceptible of access by a child to whom such toy or other article is entrusted; or (B) any hazardous substance intended, or packaged in a form suitable, for use in the household, which the Secretary by regulation classified as a "banned hazardous substance" on the basis of a finding that, notwithstanding such cautionary labeling as is or may be required under this chapter for that substance, the degree or nature of the hazard involved in the presence or use of such substance in households is such that the objective of the protection of the public health and safety can be adequately served only by keeping such substance, when so intended or packaged, out of the channels of interstate commerce: *Provided,* That the Secretary, by regulation, (i) shall exempt from clause (A) of this subsection articles, such as chemical sets, which by reason of their functional purpose require the inclusion of the hazardous substance involved, and which bear labeling giving adequate directions and warnings for safe use and are intended for use by children who have attained sufficient maturity, and may reasonably be expected, to read and heed such directions and warnings, and (ii) shall exempt from clause (A), and provide for the labeling of, common fireworks (including toy paper caps, cone fountains, cylinder fountains, whistles without report, and sparklers) to the extent that he determines that such articles can be adequately labeled to protect the purchasers and users thereof.

The 1966 Act also amended the short title of the 1960 Act by deleting the word "Labeling," 80 Stat. 1305.

4. The House Report on what was to become, in substance, the Child Protection and Toy Safety Act of 1969 paraphrases the Interim Report as having found toys to be dangerous "because they contain sharp projections which might puncture the eye or the throat, extremely hard or sharp surfaces which could cause cuts, puncture wounds, and abrasions, and heated surfaces which could burn a child and some are dangerous because they may give a child an electric shock," H.R.Rep. 91-389, 91st Cong., 1st Sess. 4, (1969), U.S.Code Cong. & Admin.News 1969, p. 1233. Only the Commission's Interim Report, dated February 25, 1969, and not its Final Report, dated June 30, 1970, was before the Senate and House Committees designated to consider the proposed legislation. See S.Rep.No. 91-237, 91st Cong., 1st Sess. (June 17, 1969); H.R.Rep. No. 91-389, 91st Cong., 1st Sess. (July 24, 1969).

retary by regulation determines, in accordance with section 1262(e) of this title, presents an electrical, mechanical, or thermal hazard.

An article might be "determined to present a mechanical hazard if, in normal use or when subjected to reasonably foreseeable damage or abuse, its design or manufacture presents an unreasonable risk of personal injury or illness * * * (3) from points or other protrusions, surfaces, edges, openings, or closures * * * or (9) because of any other aspect of the article's design or manufacture," 15 U.S.C. § 1261(s). Section 1262(e) provided that the Secretary could formulate regulations under § 1261(f) (1) (D) pursuant to the general rule-making provisions of the Administrative Procedure Act, 5 U.S.C. § 553, with an exception unnecessary here to specify, subject to judicial review, 15 U.S.C. § 1262(e) (3), unless he elected to follow the more cumbersome method of § 701(e) of the Federal Food, Drug and Cosmetic Act, see fn. 2, in which event the review provisions of that section would apply. Finally, a new section, 15 U.S.C. § 1274, which went beyond the title of the Act, provided that manufacturers, distributors or dealers must repurchase any "banned hazardous substance" in accordance with regulations of the Secretary.

■ The rules for the game manufactured by petitioner call for a "Jart" to be tossed underhand so as to arc and then land upright in a circular plastic ring target on the ground 35′ away. The Jart is a dart, about 13″ long and weighing about half a pound, with three plastic fins, an aluminum shaft and a metal nose; as a result of its design and weight distribution, it will tend to land nose-first when thrown in the air. While the point of the nose is somewhat blunted, we do not understand petitioner seriously to question that the Commissioner could permissibly decide that the Jart presented a mechanical hazard as defined in 15 U.S.C. § 1261(s) if it is a "toy or other article intended for use by children." In any event the evidence of injuries referred to below and simple common sense constitute sufficient basis for a determination that it presents a mechanical hazard, at least "when subjected to reasonable foreseeable * * * abuse."

The first official notice to petitioner of the Food and Drug Administration's concern about Jarts was a letter from the Buffalo, N. Y. district office dated October 20, 1970.[5] The letter noted that a number of injuries from Jarts had come to the agency's attention, and asked that the labeling "be revised to clearly caution purchasers and users that this game should not be used by children unless supervised by adults." Petitioner answered, on November 3, that, responsive to this request, it had cancelled all orders for boxes, instruction sheets and sales promotional literature, and had discontinued assembly of the game, temporarily laying off production personnel; that it had ordered new boxes and instruction sheets that would clearly state "that our game should be used by children only under supervision of adults"; and that it had ordered stickers to the same effect which would be placed on the outside of existing boxes and on the instruction sheets.

Despite this cooperation, the head office of the FDA advised petitioner on November 12, 1970, that it was contemplating the proposal of a regulation that would classify Jarts as a "banned hazardous substance." Such a proposal was published on November 17, 35 F.R. 17663. At a conference on November 20, attended by top representatives of the company and the FDA, petitioner was given a copy of a petition to the FDA dated November 18, 1970, by Consumers Union and the Children's Foundation concerning Jarts and products of

5. This had been preceded by an inspection of petitioner's plant and certain of its files by an FDA employee on August 6, and a telephone call by petitioner's president to the regional office on August 20.

other manufacturers, was promised a letter summary of the results of the FDA's investigations of injuries caused by Jarts, and was urged to file written comments within fifteen days. While the evidence showed that some of the reported injuries were due to the careless conduct of adults,[6] the reports of others —while varying in specificity—reveal a number of lawn dart injuries, some of which were caused by Jarts, sustained by children in the course of unsupervised activity.[7]

Petitioner submitted timely comments upon the proposed regulation. Their main thrust was that, as was claimed to be shown by various facts therein set forth, Jarts was a game intended for use by adults and was neither a toy nor an article intended for use by children; that hence it could not be a "hazardous substance" within § 1261(f) (1) (D),[8] and that therefore it could not be a "banned hazardous substance" within § 1261(q) (1). The comments noted that petitioner had made further changes in labeling. In addition to the legend, "CAUTION: SHOULD BE USED ONLY UNDER SUPERVISION OF ADULTS," on the box and the instruc-

tion sheet, the box now carried in large letters the legend "AN OUTDOOR GAME FOR ADULTS."

The Regulation published on December 17, 1970, 35 F.R. 19266, consists of three parts. The first summarizes the comments received on the proposal of November 17, the second gives the Commissioner's conclusions from them, and the third, the operative part, adds two new sections to the Regulations under the Federal Hazardous Substances Act, 21 C.F.R. Part 191. We can pass over the first part, and also the second except for the conclusion, stressed by petitioner:

2. The large outdoor-type darts are intended for use by adults as an outdoor sport or game. Suitable labeling can be devised to inform parents or other adults of the necessity of carefully supervising children if they are to be permitted to play the game and to give other information relating to the safety of all nonplayers in the immediate area.

Section 191.9a of the new Regulations, entitled *Banned toys,* recited a determination that various toys or other articles intended for use by children

---

6. In one instance, a father attempted to catch a Jart in flight; in another, adults had set up the game next to where a four year old child was playing.

7. The FDA's letter of November 23, 1970, which furnished the petitioner with information on lawn dart injuries, discloses sixteen injuries from lawn darts, ten of them from Jarts. Although the letter is wanting in detail, other evidence of record reveals the circumstances surrounding a number of lawn dart injuries. For example:

> While his parents were inside eating dinner, a four-year old child was playing outside in a sandbox and his ten-year old brother and eight-year old cousin were nearby playing with Jarts. When the child emerged from the sandbox to retrieve a ball, he came into the path of the Jart, was struck on the head, and later died.
> During a school picnic for seventh and eighth graders, two boys were playing with Jarts. A thirteen-year old girl "decided to go by and she picked up the

> target [a circular plastic hoop] and dashed in and this is when it hit her." The girl died from the injury.
> Two sisters ages six and seven were playing on their neighbor's lawn with some "Yard Darts." The younger sister picked up one of the darts and threw it toward the ring target on the ground. The dart hit the elder sister near the eye, and the injury required 12–14 stitches.

Most of the lawn dart injuries of record were in 1970; the earliest was in 1967. The Government suggests that since Jarts have been on the market since the late 1950's, these recently reported injuries are only a small proportion of the total.

8. The Government does not contend that Jarts was a hazardous substance within § 1261(f) (1) (A) or even that it could be so defined by regulations under § 1261 (f) (1) (B). In any event the procedure here followed did not conform to the requirements of the latter sub-sub-subsection.

presented a mechanical hazard within § 1261(s) and that among these were:

(4) Lawn darts and other similar sharp-pointed toys usually intended for outdoor use and having the potential for causing punture wound injury.

However, having marched all the way up the hill with respect to lawn darts, the Commissioner then marched a considerable distance down. Section 191.65a, entitled *"Exemptions from classification as a banned toy,"* says that the term "banned hazardous substance" as used in 15 U.S.C. § 1261(q) (1) (A) shall not apply to various articles, among which are:

(3) Lawn darts and similar sharp-pointed articles not intended for toy use and marketed solely as a game of skill for adults, provided such articles:

(i) Bear the following statement on the front of the panel of the carton and on any accompanying literature:

WARNING: Not a toy for use by children. May cause serious or fatal injury. Read instructions carefully. Keep out of reach of children.

Such statement shall be printed in sharply contrasting color within a borderline and in letters at one-quarter inch high on the main panel of the container and at least one-eighth inch high on all accompanying literature.

(ii) Include in the instructions and rules clear and adequate directions and warnings for safe use including a warning against use when any person or animal is in the vicinity of the intended play or target area.

(iii) Are not sold by toy stores or store departments dealing predominantly in toys and other children's articles.

The controversy stems mainly from the ambiguity in the phrase "toy or other article intended for use by children" as used in 15 U.S.C. § 1261(f) (1) (D) and (q) (1). The House Committee report gives as examples:

games; dolls, stuffed animals, and other toys; swings, slides, seesaws, and other playground equipment; sleds, toboggans, bicycles, tricycles, and other recreational equipment; infants' carriages and strollers; slatted, netted, or lidded cribs and other nursery equipment; children's furniture; science and construction kits; children's footwear; and sports equipment.

H.R.Rep., 91–389, 91st Cong., 1st Sess. 9 (1969), U.S.Code Cong. & Admin. News 1969, p. 1236. However, the Senate report, while noting similar examples, S.Rep. No. 91–237, 91st Cong., 1st Sess. 2 ("roly poly doll," toy blowgun) (1969), also refers to equipment which is to be presented to a child for his "amusement" or to be "used for children in close proximity to them" and contains a statement "In no event, however, were any of these terms so broad as to give the Secretary of Health, Education and Welfare the authority to prescribe design criteria for all products to which children have access." *Id.* at 5.

It is plain enough that such articles as rattles, dolls, stuffed animals, nursery and playground equipment, and infants' carriages and strollers, which are intended only for use by children, fall within the statutory term. On the other hand, despite the mention of sports equipment in the Committee reports, the mere fact that a child might get hold of an article of that character which is kept in the home but is intended solely for use by adults, such as a regulation size golf-club or rifle, would scarcely make the statute applicable. Between these ends of the spectrum is a case like this where the article is intended primarily for use by adults but also for use by children when playing with them.

The Government argues with what it considers relentless logic that if an article is intended for use by children, even only when under adult supervision, it is

nonetheless "intended for use by children." Proceeding from this premise, it points to the affidavit of petitioner's president, submitted as a comment to the FDA, which, while stating that the company had "always sold and promoted Jarts as an adult game," went on to recognize that "it can be played and enjoyed by children with appropriate adult supervision" and that "the product has always been marketed for adults, and for family use when the children are supervised by adults." It calls attention to the former label "An Outdoor Game for the Entire Family," to a picture apparently still on the box and the instruction sheet which shows a mother, a father and a girl scarcely over ten who is either holding a Jart or gleefully watching her mother throw one, and the instructions that the game is for "old or young" and can be played "effortlessly and expertly by all." The logic is supplemented by the common-sense consideration, borne out by the evidence of injuries, that a child who has learned the delight of Jarts in competing with adults in accordance with with the rules of the game, may decide to experiment with some new and more hazardous methods of play when an adult is not around—a consideration that in fair measure distinguishes lawn darts from many familiar objects children are not supposed to use at all, which petitioner heralds as reducing the Government's argument to an absurdity. The Government also brings to our attention a summary compilation of hazardous toys submitted by the National Commission on Product Safety, whose Interim Report is cited extensively in both the Senate and the House Committee reports recommending what became the Child Protection and Toy Safety Act of 1969. This summary, quoted in the House report, listed rocket lawn dart sets, an article differing from Jarts only in having a more pointed nose, as a toy that "can foreseeably cause severe injury even to careful young children on being hurtled." See H.R.Rep. 91–389, 91st Cong., 1st Sess. 6 (1969). If the legislation is to be read as a charter to the Secretary to outlaw every article referred to by the Commission, Jarts must therefore be includible.

Petitioner responds that so broad a reading would produce results that Congress could never have purposed. For one example, it cites the fish-hook. While these, like Jarts, are intended primarily for use by adults, they often are used by children, initially under the supervision of a parent or older sibling, but later often without. For another, it cites the indoor dart, which has a much sharper point than the Jart. These, too, although intended primarily for adult use, may be used by children who have seen adults playing or have played with them. Could Congress have meant to authorize the Secretary to ban an article that is standard equipment in every British pub? Petitioner caps its argument with the conclusion in the December 17 Regulations, quoted above, that "[t]he large outdoor-type-darts are intended for use by adults as an outdoor sport or game." It contends that by saying this the Commissioner cut the ground out from under himself. The Government naturally denies this.

■ Both sides want us to decide an issue that does not require determination now. The Government, although recognizing the possibility of a narrower ruling in its favor, would like it best if we were to say the Secretary could ban Jarts altogether; petitioner urges us to hold that under no circumstances could this be done and seems to think such a holding would end the case in its favor. We are not obliged thus to accommodate either party. When the two sections added to the Regulations are read together, as they must be, they do not say that lawn darts are a "toy or other article intended for use by children" *semper et ubique*. They say lawn darts are such when and only when they do not carry a warning that they are "Not a Toy for Use by Children" and when they are "sold by toy stores or store departments dealing predominantly in toys and other children's articles." A manufac-

turer, knowing that lawn darts can be and have frequently been used by children, who refuses to label them as "not a toy for use by children" or to refrain from selling them in toy stores or toy departments, can hardly be heard on this record to deny that darts which are not so labeled or which are sold in toy stores are a "toy or other article intended for use by children." Yet it is only such lawn darts which the Regulation makes a "banned hazardous substance." The broader issue, whether the Commissioner could classify Jarts as "banned hazardous substances," as he proposed in the Regulation initially published, even though they are labeled and sold as the current Regulation provides, can await another day which may never dawn. If it should a reviewing court would have the benefit of experience under the present Regulation on which to draw.

Although petitioner does not strongly argue the point, it is necessary to consider whether even if Jarts can lawfully be brought within § 1261(f) (1) (D) and thus § 1261(q) (1) (A) to the extent they have been, they are nevertheless entitled to exemption under the first proviso of § 1261(q) (1) which requires the Secretary to exempt from classification as a "banned hazardous substance" under clause (A) articles "which by reason of their functional purpose * * * necessarily present an electrical, mechanical, or thermal hazard, and which bear labeling giving adequate directions and warnings for safe use and are intended for use by children who have attained sufficient maturity and may reasonably be expected, to read and heed such directions and warnings * * * ." Assuming *arguendo* that this provision is applicable, we think the Regulation satisfied it. It did exempt Jarts from classification as a "banned hazardous substance," on two conditions. One of these, cautionary labeling, is permitted, indeed required, by the statute. The other, the prohibition of sale in toy stores or store departments dealing predominantly in toys and other children's articles, is a reasonable method for en-

deavoring to assure against use by children who are not likely to meet the conditions of the proviso.

It remains only to decide whether petitioner should be allowed a further period in which to effect compliance. It can be argued against this that great weight should be accorded the Deputy Commissioner's determination that "it would be contrary to the public interest to delay the effective date" and that petitioner has already had a stay of several weeks. Against this we are favorably impressed by petitioner's cooperation with the FDA before any proceeding was brought, and this season is not conducive to the playing of lawn darts in most parts of the country. We therefore continue the stay of the Regulation with respect to petitioner for ten days from the filing of this opinion.

The petition for review is denied.