CAMP CREEK DUCK FARM, INC., Plaintiff-Appellant, *v.* SHELL OIL COMPANY *et al.*, Defendants-Appellees.

Fourth District    No. 16832

Opinion filed December 30, 1981.—Modified on denial of rehearing January 29, 1982.

Robert D. Owen, Marshall A. Susler, and Darrel F. Parish, all of Owen, Roberts, Susler & Murphy, of Decatur, for appellant.

Rosenberg, Rosenberg, Bickes, Johnson & Richardson, Chartered, of Decatur, and Heyl, Royster, Voelker & Allen, of Peoria (Rex K. Kinder and Roger R. Clayton, of counsel), for appellees.

JUSTICE YONTZ delivered the opinion of the court:

Plaintiff appeals from an order dismissing its third amended complaint. The complaint attempts to state a cause of action against each defendant based on strict liability. The trial court's order dismissing the third amended complaint is affirmed in part and reversed in part.

# I. The Complaint

The initial complaint in this action was filed on March 8, 1979. Following the dismissal of this complaint and subsequent dismissals of amended complaints, the third amended complaint was filed on September 23, 1980. The complaint contained six counts; the first three against defendant Shell Oil Company (Shell), and the last three against defendant Riverdale Chemical Company (Riverdale). Counts I and III are based on the theory that the products of defendants were inherently defective. Counts II and V are based on the theory that the products are defective and unreasonably dangerous for failure to give adequate warning. Counts III and VI allege inherent defectiveness as well as failure to give an adequate warning.

The complaint alleges that a division of the defendant Shell Oil Company manufactured the substance aldrin, which was the active ingredient in a "tracking powder" rat poison. The rat poison was manufactured by defendant Riverdale by mixing the aldrin with an inert powder. Defendant Riverdale then sold this tracking powder to Illini Pest Control and Service, Inc. (Illini). Plaintiff alleged that defendant Shell sold the aldrin to defendant Riverdale, and defendant Riverdale sold its tracking powder to Illini, each knowing that the powder was very effective as a rodenticide and that it would be used as a tracking powder.

Plaintiff operates a federally inspected duck processing plant, and engaged Illini to conduct an ongoing rat control program for its duck farm. As part of this program, Illini used a tracking powder rat poison containing aldrin. The tracking powder was placed on plaintiff's farm in areas where his ducks ran and fed. This caused the earth and buildings upon the farm to be increasingly contaminated with aldrin and dieldrin, which is a compound formed when aldrin decomposes.

Aldrin and dieldrin have a strong propensity to accumulate in living organisms. Approximately a year after the rat poison was used, plaintiff was required by the Federal government to destroy many thousands of ducks because they contained amounts of aldrin and dieldrin in excess of that allowed by Federal regulations. The chemicals also leave a significant residue in the environment for in excess of one year and as much as 50 years. This contamination caused plaintiff's farm to be unfit for the only purpose for which it is suited, namely, raising ducks.

Count I alleges that the aldrin was defective and unreasonably dangerous at the time it left control of Shell, and count IV alleges that the tracking powder, containing aldrin, was defective and unreasonably dangerous at the time it left defendant Riverdale, in that these products had the propensity to accumulate in substantial quantities in the tissues of animals when ingested or otherwise absorbed into the bodies of animals.

Counts II and V allege that defendants knew of the danger of using aldrin on a poultry farm since the flesh of the poultry would be contaminated while at the same time causing no apparent physical harm or toxicosis to the poultry. Defendants failed to give any warning of this danger although they knew or should have known that such harm would result due to the failure to give a warning of such danger. Consequently, the aldrin, and the tracking powder containing the aldrin, were unreasonably dangerous at the time it left control of each defendant in that there was no adequate warning.

Counts III and VI allege the aldrin and tracking powder containing aldrin were unreasonably dangerous at the time they left control of each defendant in that they had the propensity to contaminate plaintiff's farm leaving it unfit for a period of from one to fifty years. Also, the failure to warn of the danger of this contamination, notwithstanding the fact that each defendant knew or should have known of the consequences of the failure to warn, rendered the products unreasonably dangerous.

Motions to dismiss this third amended complaint were filed by defendant Shell on September 26, 1980, and by defendant Riverdale on October 14, 1980. Both motions were granted on all counts and the complaint was ordered dismissed with prejudice on November 26, 1980. Notice of appeal was filed on December 12, 1980.

## II. INHERENT DEFECTIVENESS

Plaintiff has alleged in counts I and III that the product aldrin is defective because it has the propensity to accumulate in the tissue of living organisms, and in counts III and VI that the product is defective in that it has the propensity to contaminate plaintiff's farm leaving it unfit for a period of from one to 50 years. Plaintiff does not cite any authority on this point, but merely asserts that whether a product is unreasonably dangerous is a question of fact and not law.

The theory of strict liability in tort as advanced in section 402A of the second torts restatement (Restatement (Second) of Torts §402A (1965)), was adopted by the Illinois Supreme Court in *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182. Comment *i* to section 402A, entitled "[u]nreasonably dangerous," provides that "[t]he article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Comment *g* to section 402A, entitled "[d]efective condition," provides that the rule applies when the product is "in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." This definition of a defective product was approved by our supreme court in both *Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d

339, 247 N.E.2d 401, and *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368.

In *Blasius,* the court refused to find that a sign post along a highway was defective due to the failure to design it with a "break-away" design. The court stated:

"Virtually any product is capable of producing injury when put to certain uses or misuses. * * * Injuries are not compensable in products liability if they derive merely from those inherent properties of a product which are obvious to all who come in contact with the product. (*Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 467.) The injuries must derive from a distinct defect in the product, a defect which subjects those exposed to the product to an *unreasonable* risk of harm. The Restatement (Second) of Torts concludes that strict liability applies only when the product is 'dangerous to an extent *beyond* that which would be contemplated by the ordinary [person] * * *, with the ordinary knowledge common to the community as to its characteristics.' " 74 Ill. 2d 203, 211-12, 384 N.E.2d 368, 372.

■■ Similarly, we do not believe that a rat poison manufactured as a rat poison and sold as a rat poison for use as a rat poison is defective or dangerous to an extent beyond that which would be contemplated by the ordinary consumer of rat poison simply because the poison has the propensity to contaminate living beings other than rats. Therefore, counts I and IV must fail and the trial court is affirmed on those counts.

■■ The allegations of counts III and VI, that the products were defective due to their propensity to contaminate the land for from one to 50 years, present a harder question. At this point we note that a motion to dismiss admits facts well pleaded but does not admit conclusions of law or fact unsupported by allegations of specific facts upon which conclusions rest. (*Zamouski v. Gerrard* (1971), 1 Ill. App. 3d 890, 275 N.E.2d 429.) A complaint should not be dismissed for failure to state a cause of action unless it clearly appears that no set of facts could be proved under the pleadings which would entitle plaintiff to relief. (*Rudnick v. Vokaty* (1980), 84 Ill. App. 3d 1003, 406 N.E.2d 105.) We believe that contamination for a period of one to 50 years is beyond the expectation of the ordinary consumer. However, there is nothing in the complaint to suggest that this failure to decompose is an inherent defect. If the products were unreasonably dangerous, it is because of the failure to give an adequate warning of this danger. Our supreme court has recognized a distinction between products which are inherently defective and products which are in a defective condition unreasonably dangerous because of the absence of an adequate warning accompanying the product. (*Woodhill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 30, 402 N.E.2d 194, 196.) Here, as in

*Blasius*, the complaint alleges no legally cognizable inherent defect. Therefore, no cause of action is stated by those portions of counts III and VI alleging inherent defectiveness, and the trial court is affirmed to that extent on those counts.

### III. Adequacy of Warning

Counts III and VI further alleged, as did counts II and V, that the product of each defendant is unreasonably dangerous due to a failure to give an adequate warning to plaintiff. Comment *j* to section 402A provides that "[i]n order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. * * * Likewise in the case of poisonous drugs, or those unduly dangerous for other reasons, warning as to use may be required." (Restatement (Second) of Torts §402A (1965).) The premise that a product can be unreasonably dangerous due to the inadequacy of a warning was incorporated into Illinois law by the holding in *Palmer v. Avco Distributing Corp.* (1980), 82 Ill. 2d 211, 412 N.E.2d 959.

■■ In the present case, a copy of a warning is included in the record immediately following plaintiff's first complaint. The complaint, however, does not state that this warning is incorporated into the complaint nor is the warning marked as an exhibit or in any way to indicate it was incorporated into the complaint. The subsequent amended complaints are not followed by a copy of the warning and also do not purport to incorporate the warning. Section 36 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 36) provides that "[i]n pleading any written instrument a copy thereof may be attached to the pleading as an exhibit. In either case the exhibit constitutes a part of the pleading for all purposes." While we have seen no case delineating the proper manner to attach an instrument for these purposes, we believe it is clear that the pleading must make reference to a specifically identified instrument, and it must be made clear that the instrument is intended to be incorporated as a part of the pleading. Although defendants' motions to dismiss either quote from the warning or refer to "exhibit A" and purport to incorporate this exhibit into the motion, where there is no such exhibit it cannot be incorporated. Once again, on a motion to dismiss, it is the facts well pleaded which are admitted, not the allegations of the motion to dismiss. (*Zamouski.*) We are compelled to conclude that the warning is not properly before this court, and we cannot include it in our consideration of the issues.

Counts II and V of the complaint allege defendants failed to give any warning of the danger of contamination to the ducks and that the products were sold without giving an adequate warning. As we noted in the previous section, the products were not dangerous to an extent

beyond that which would be contemplated by the ordinary consumer of rat poison simply because the poison also had the propensity to contaminate ducks. No warning of this danger was necessary, and any warning that was given would be adequate. Therefore, the trial court's dismissals of counts II and V are affirmed. This court is cognizant of the warning requirement imposed on such products as aldrin by the Uniform Hazardous Substances Act of Illinois (Ill. Rev. Stat. 1979, ch. 111½, par. 251 *et seq.*). However, there is no allegation that those requirements were not met or that failure to meet these requirements contributed to the injuries. Therefore, our determination that there was no duty to warn of this particular injury in no way detracts from the requirements of the Uniform Hazardous Substances Act of Illinois.

■■ Counts III and VI allege that the products were sold without any warning of the contamination of the land for a period of from one to 50 years. The foregoing was a sufficient allegation that the product manufactured was unreasonably dangerous. Therefore, those portions of counts III and VI which allege unreasonable dangerousness due to the failure to give an adequate warning state a cause of action, and the trial court is reversed to that extent.

Affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.

GREEN, P. J., and TRAPP, J., concur.