**Jeramie AIMONE, a minor, by Mary Ann AIMONE, his mother and next friend, Plaintiff,**

v.

**WALGREEN'S CO. and Regent Sports Corporation, Defendants.**

**REGENT SPORTS CORPORATION and Walgreen's Co., Counter-Plaintiffs,**

v.

**Mary Ann AIMONE, Counter-Defendant.**

REGENT SPORTS CORPORATION and
Walgreen's Co., Third Party Plaintiffs,

v.

George AIMONE and Wayne Bradford
and Paula Bradford, Third Party
Defendants.

No. 83 C 4724.

United States District Court,
N.D. Illinois, E.D.

Jan. 8, 1985.

Paul E. Root and Roger B. Gomien, Gomien, Root & Masching, Morris, Ill., for plaintiff.

Royce Glenn Rowe, McKenna, Storer, Rowe, White & Farrug, Marthe C. Purmal, Tyrrell & Flynn, Robert D. Kolar, Robert D. Kolar & Associates, Ltd., Raymond Cusack, Johnson, Cusack & Bell, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff Jeramie Aimone, a minor bringing suit by his mother, Mary Ann Aimone, was allegedly severely and permanently injured on July 4, 1982, when the point of a lawn dart penetrated his skull and entered his brain. Plaintiff, two and one-half years old at the time of the accident, walked away from his parents without supervision and walked into the path of a lawn dart thrown by an eight-year old girl. The lawn dart was manufactured and distributed by defendant Regent Sports Corporation (Regent) under the product name "Slider Jarts." The specific dart that injured plaintiff was sold on July 2, 1982, by defendant Walgreen's Co. at its store in the Jefferson Square Shopping Mall in Joliet. Plaintiff brought a five-count complaint. In Count I plaintiff charged defendant Walgreen's with liability under 15 U.S.C. § 2072 for selling and distributing a product labeled "hazardous" under 16 C.F.R. § 1500.18. In Count II plaintiff charged defendant Walgreen's with breach of implied warranty of merchantability. In Count III plaintiff charged defendant Regent with liability under 15 U.S.C. § 2072 for manufacturing and distributing a product labeled "hazardous" under 16 C.F.R. § 1500.15. In Count IV plaintiff sought damages against Regent on a strict liability basis. In Count V plaintiff sought damages from defendants Wayne and Paula Bradford, possessors of the darts and owners of the home where plaintiff was injured, for negligence. In each count plaintiff asked for $7,000,000.

A flurry of counterclaims and third party claims followed the filing of the complaint. Defendants Walgreen's and Regent brought counterclaims against Mary Ann Aimone, and third party claims against George Aimone, alleging negligent supervision of plaintiff on the day of the injury. They also brought third party claims against the Bradfords, seeking contribution due to the Bradfords' negligence under the Illinois Contribution Among Joint Tortfeasors Act, Ill.Rev.Stat. ch. 70, § 301 *et seq.* The Bradfords brought third party actions under the same statute against defendants Walgreen's and Regent.

Before the court are a number of motions. Both defendant Walgreen's and plaintiff move for summary judgment on Count I of the complaint. Both defendant

Regent and plaintiff move for summary judgment on Count III of the complaint. Defendant Regent also moves for summary judgment on Count IV. The Bradfords move to dismiss Count V of the complaint. Finally, George Aimone and Mary Ann Aimone move to dismiss the third party complaint and counterclaim filed against them respectively.

### Count I

Title 15 U.S.C. § 2072(a) provides:

> Any person who shall sustain injury by reason of any knowing (including willful) violation of a consumer product safety rule, or any other rule or order issued by the [Consumer Product Safety] Commission may sue any person who knowingly (including willfully) violated any such rule or order in any district court of the United States....

Jurisdiction therefore exists in this court and damages are recoverable under the statute if plaintiff can show that defendant Walgreen's knowingly violated a Commission rule or order and that plaintiff was injured by reason of that violation.

Lawn darts are banned as a toy intended for the use of children. *See* 16 C.F.R. § 1500.18(a)(4) (1984). Lawn darts, however, can legally be sold provided that they bear the proper warnings, include clear instructions, and

> [a]re not sold by toy stores or store departments dealing predominantly in toys and other children's articles.

16 C.F.R. § 1500.86(a)(3) (1984). Defendant Walgreen's claims the lawn darts it allegedly sold that injured plaintiff were displayed in the store's sporting goods department, isolated from the toy department. In support of its claims Walgreen's submits the deposition testimony of Joan Farmer, the person who purchased the lawn darts, who states she bought the darts "along the midways" of the store next to "the little birdie things," referring to a Badminton set. Walgreen's also presents the affidavits of three store employees: Art Boyce, who states that to the best of his knowledge during the summer of 1982 the darts were not for sale in the store except in the sporting goods department; Deborah Wagner, who states that she personally stacked and supervised the store's sporting goods department and, to the best of her knowledge, darts were only in the sporting goods department, at least 75 feet away from the toy department; and Michael Zak, who states that in 1982 darts were displayed only in the sporting goods department, above the Badminton sets.

Plaintiff contests Walgreen's claim that the darts were only properly sold in the sporting goods department. Plaintiff presents a photograph taken on July 21, 1982, that shows the darts displayed among the toys in a "summer toy promotion area" of the store. In addition, plaintiff submits the affidavit of a former employee of the store, Chris Bozue, who states the darts were displayed as indicated in the photograph. Plaintiff also attempts to submit through Rule 803(2) of the Federal Rules of Evidence a hearsay statement by Ms. Farmer, made after the accident, claiming she picked up the darts from the "toy section, display on the floor." Finally, plaintiff argues that even if Walgreen's is correct as to where the darts were stacked, that area, though designated a sporting goods department, contained products primarily for children and therefore not proper for lawn darts pursuant to 16 C.F.R. § 1500.86(3)(iii).

Both plaintiff and Walgreen's move for summary judgment on Count I, with regard to whether Walgreen's knowingly violated a consumer product safety rule. Summary judgment should be entered only when the pleadings, depositions, affidavits and admissions demonstrate that as to liability "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of establishing the non-existence of a material issue and all inferences are to be drawn in favor of the non-movant. *See Hadley v. County of DuPage,* 715 F.2d 1238, 1240 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1000, 79 L.Ed.2d 232

(1984); *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1*, 603 F.2d 7, 10 (7th Cir.1979). From the affidavits and depositions submitted by both parties, the court concludes that a material issue does exist as to the placement of the dart sets in the store. The conflicting affidavits, the questioned photograph and the deposition testimony create doubt as to the location that can only be dealt with at trial.

Plaintiff also claims that even if located in the "sporting goods" department, the darts were sold in violation of section 1500.-86(3)(iii). Walgreen's claims the darts were sold in its outdoor sports center and, for the purposes of this issue, that will be assumed. To resolve this issue the court must determine what products were actually on sale in that center.

The outdoor game center potentially carried a variety of sporting goods equipment. The Walgreen's outdoor game center promotional sheet (*see* Boyce dep., ex. 1) shows that available for the center were Little League baseball bats, youth softball bats, adult softball bats, baseball gloves for juniors, youths and Little Leaguers, rubber-covered baseballs and softballs, as well as official baseballs and softballs. Also available were tennis rackets for juniors and adults, badminton and volleyball sets, soccer balls, kickballs, and the lawn darts. Mr. Boyce, the store's manager at the time of the sale, stated that the sporting goods center basically stocked the items that were available from the promotional sheet (Boyce dep. at 29). He stated that baseball bats and baseball gloves were not included but specifically mentioned as being included: badminton sets, volleyball sets, tennis rackets, tennis balls, and lawn darts (Boyce dep. at 68–69, 79). Ms. Wagner stated that all the products available from the sheet were not stocked in the store (Wagner dep. at 20), though she stated that she stacked the products they did carry in accordance with the sheet (Wagner dep. at 25). Ms. Wagner testified that the department did include badminton sets, volleyball sets, baseball and softball gloves, baseballs, tennis balls and lawn darts (Wagner dep. at 14, 47). At one point in her deposition she stated that baseball bats were included and at another time she said they were not (Wagner dep. at 14, 29). Both Ms. Wagner and Mr. Boyce stated that tennis balls were in both the sporting goods center and the toy center (Wagner dep. at 24; Boyce dep. at 79). Ms. Farmer remembered badminton sets near the lawn darts she purchased and recognized the picture of the promotional sheet as being similar to the aisle setup from where she picked up the darts (Farmer dep. at 54, 63).

The regulations provide that lawn darts will not be considered a hazardous product if they are not "sold by toy stores or store departments dealing predominantly in toys and other children's articles." 16 C.F.R. § 1500.86(3)(iii). The question before the court is whether the Walgreen's sport goods center predominantly contained "toys and other children's articles." To define "toys and other children's articles," the court notes the similarity between this phrase and "toy or other article intended for use by children" found in 15 U.S.C. § 1261(f)(1)(D) and § 1261(q)(1). Section 1261 was among the authorizing statutes for 16 C.F.R. § 1500. In fact, the Consumer Product Safety Commission has used the two phrases interchangeably. For example, in 16 C.F.R. § 1500.86(4) the Commission used the heading "toys and other children's articles presenting mechanical hazards" to describe the scope of its authority under 15 U.S.C. § 1261(f)(1)(D). *See also* 46 F.R. 58702, 58703 (1981) (stating that sections (f)(1)(D) and (q)(1)(A), among others, authorized the regulation of "toys or other children's articles"). In light of this similarity of the phrases and the Commission's interchangeable use of the two phrases, the court finds that the Commission intended the types of products referred to in 16 C.F.R. § 1500.86(3)(iii) be the same as those regulated pursuant to 15 U.S.C. § 1261(f)(1)(D) and § 1261(q)(1)(A).

The House Report discussing the definition of "toy or other article intended for

use by children," listed things it intended to be included in the phrase.

Examples of the types of articles covered by that phrase are games; dolls, stuffed animals, and other toys; swings, slides, seesaws, and other playground equipment; sleds, tobaggons, bicycles, tricycles, and other recreational equipment; infants' carriages and strollers; slotted, netted, or lidded cribs and other nursery equipment; children's furniture; science and construc-tion kits; children's footwear; and sports equipment.

H.R.Rep. 91–389, 91st Cong., 1st Sess., *reprinted in* 1969 U.S.Code & Ad.News, 1231, 1236. Sports equipment is included in this definition. It must also be noted that while furniture and footwear are preceded by the word "children's," used as an adjective, the scope of sports equipment included in this definition is not so limited. The Senate Report states:

It was decided that a "toy" was any article that was normally presented to the child for his amusement. The term "other article intended for use by children" included articles normally used for children in close proximity to them.

Senate Rep. 91–237, 91st Cong., 1st Sess. (1969), at 5. This Report seems to include sporting goods to the extent they are normally presented to children for their amusement.

Courts have further honed the definition given by the statute. In *R.B. Jarts, Inc. v. Richardson*, 438 F.2d 846, 852 (2d Cir. 1971), the court discussed the propriety of finding sports equipment within the definition. Without ruling in a case dealing with lawn darts similar to those used here, Judge Friendly wrote:

It is plain enough that such articles as rattles, dolls, stuffed animals, nursery and playground equipment, and infants' carriages and strollers, which are intended only for use by children, fall within the statutory term. On the other hand, despite the mention of sports equipment in the committee reports, the mere fact that a child might get hold of an article of that character which is kept in the

home but is intended solely for use by adults, such as a regulation size golf club or rifle, would scarcely make the statute applicable. Between these ends of the spectrum is a case like this where the article is intended primarily for use by adults but also for use by children when playing with them.

The court in *Forester v. Consumer Product Safety Commission*, 559 F.2d 774 (D.C. Cir.1977), gave a concrete definition. It noted the foreseeability concepts relied upon by the Federal Hazardous Substance Act, *id.* at 786 n. 141, and the discussion in *R.B. Jarts*. It held that products, the use of which by children was reasonably foreseeable and not just incidental, were included in the definition. *Id.* at 786. The court in *Forester* found that finding a full-sized bicycle within the definition was not an abuse of discretion or contrary to law. *Id.*

■ This court is mindful that the statutory definition should not be stretched too far, *see Forester, supra* at 786, but it also finds that the legislative history of the statute and the case law calls for an expansive definition. Accordingly, the court finds that "toys and other children's articles" include those sporting goods which it was reasonably foreseeable would be given to children for play.

■ It is not clear what was actually in the sporting goods center. There was testimony that badminton sets, volleyball sets, tennis rackets, tennis balls and baseballs were in the center. Other possible products included baseball bats, baseball gloves, 12-inch softballs, 16-inch softballs, racquetball rackets, racquetball balls, leather soccer balls and kickballs. There was no specific testimony as to which of these products were actually present. It is also not certain whether the mix of products that did exist could be classified within the definition of children's toys laid out earlier. These determinations are more properly made by a trier of fact. Plaintiff's motion for summary judgment on this ground is also denied.

## Count III

Both plaintiff and defendant Regent Sports Corporation, the manufacturer of the darts, move for summary judgment on Count III. Count III is also brought under 15 U.S.C. § 2072(a). Plaintiff claims that Regent introduced a product in violation of 16 C.F.R. § 1500.18(a)(4) and § 1500.-86(a)(3)(iii) because the darts were improperly sold by Walgreen's. Regent argues that, while possibly improperly sold by Walgreen's, the product satisfied all the requirements for which it could be held responsible and, therefore, that it did not commit a "knowing (including willful)" violation of the regulation as required by section 2072.

Regent claims, with support through affidavits and exhibits, that it properly packaged the lawn darts and included instructions required by the regulations. This is not disputed by plaintiff. But, because all the requirements laid out in 16 C.F.R. § 1500.86(a)(3) may not have been satisfied, the lawn darts might have been a hazardous product not legally manufactured and sold. If section 2072 was a strict liability statute Regent could consequently be liable. Section 2072, however, allows recovery only on injury sustained by reason of a "knowing (including willful) violation of the consumer product safety rule." The question becomes whether Walgreen's possibly improper selling of the darts could constitute a "knowing (including willful) violation" on Regent's part.

"Knowing (including willful)" is not defined within the section and the legislative history is mute on its meaning. The original draft did not contain the language, it was added on the floor of the House in an amendment designed to reduce the number of cases it was feared would flood the federal courts upon the section's enactment. *See* 118 Cong.Rec. 31402 (1972). Debate on the amendment rested exclusively on the addition of a $10,000 minimum requirement. The discussion does indicate, however, that the "knowing (including willful)" language was intended to narrow the range of cases in federal court.

The term "knowingly," however, is defined in another section of the Act. Section 2069 prescribes civil penalties for a knowing commission of one of the prohibited acts in section 2068. One of the acts is the manufacture of a banned hazardous product. The statute defines "knowingly" as

(1) the having of actual knowledge, or (2) the presumed having of knowledge deemed to be possessed by a reasonable man who acts in the circumstances, including knowledge obtainable upon the exercise of due care to ascertain the truth of representations.

15 U.S.C. § 2069(d). In the Senate Report regarding this section, the definition of "knowingly" included knowledge of the "probable consequences of actions in disregard of reasonable safeguards." *See* Senate Rep. 92–742, 92nd Cong., 2d Sess. (1972) 37, *reprinted in* The Consumer Products Safety Act, BNA (1973). In light of these definitions Regent will have violated section 2072 if it disregarded reasonable safeguards involved in distributing the darts or acted without knowledge ascertainable upon the exercise of due care.

In his affidavit Carl Monette, accounting manager for Regent, detailed the precautions Regent takes in ensuring that the lawn darts are not sold with toys. In the catalogs distributed by Regent the description of the games states, "Not a toy. (Not to be sold in toy departments.)" The invoices state, "Not to be sold in toy or children's departments." Every master carton containing the individual game boxes states, "Not to be sold in toy departments." Mr. Monette states that Regent refuses to sell lawn dart games to toy stores or outlets primarily selling toys. Finally, the games are not delivered directly to Walgreen's stores but are delivered to the Walgreen's Deerfield, Illinois, warehouse. Plaintiff does not dispute those affidavits.

 It is clear that Regent took a number of precautions in distributing the lawn darts, whether or not the darts were improperly retailed by Walgreen's. It made it clear in its catalog, invoices and cartons,

that the darts were not to be sold with toys. It purposely determined not to sell the product to toy stores. Walgreen's, to which it did sell, deals primarily in drugs, cosmetics and adult items. In addition, Regent delivered the product not to individual stores but to Walgreen's warehouses. There is nothing to suggest Regent's actual knowledge of how Walgreen's distributed darts to the Joliet store or its knowledge of facts which might have reasonably alerted Regent to the manner of distribution. This court does not believe that Congress intended to impose a duty upon a manufacturer to monitor the merchandising practices of its customers, presumably by some form of roving inspections, in the circumstances here presented. Accordingly, Regent's motion for summary judgment on Count III is granted and the plaintiff's cross motion is denied.

### Count IV

Because the federal claim against Regent does not survive, this court no longer has pendent jurisdiction over Count IV. Pendent party jurisdiction is not appropriate in this instance. *See generally Hixon v. Sherwin-Williams Co.*, 671 F.2d 1005 (7th Cir.1982); *U.S. General, Inc. v. City of Joliet*, 598 F.2d 1050, 1054–55 (7th Cir. 1979). The Bradfords, however, brought third party claims against Regent. This court, therefore, can maintain the claims under its ancillary jurisdiction. For that reason, the court addresses plaintiff's allegations in Count IV.

In Count IV of the complaint plaintiff alleges that the darts were "unreasonably dangerous for their intended use." Regent moves to dismiss, claiming the darts were not unreasonably dangerous and that unsupervised use by children was not a foreseeable use. Regent's second argument is rejected. The court, however, dismisses the count on the ground that the darts were not unreasonably dangerous.

■ Under Illinois law an action in strict liability lies only if the product in question is " 'dangerous to an extent *beyond* that which would be contemplated by the ordi-

nary [person] . . ., with the ordinary knowledge common to the community as to its characteristics.' " *Hunt v. Blasius*, 74 Ill.2d 203, 211–12, 23 Ill.Dec. 574, 578, 384 N.E.2d 368, 372 (1979) (emphasis in original), *quoting* Restatement (2d) of Torts, § 402(a), comment i (1965). *See Walker v. Maxwell City, Inc.*, 117 Ill.App.3d 571, 576, 73 Ill.Dec. 92, 97, 453 N.E.2d 917, 922 (1st Dist.1983); *Camp Creek Duck Farm, Inc. v. Shell Oil Co.*, 103 Ill.App.3d 81, 84, 58 Ill.Dec. 443, 445, 430 N.E.2d 385, 387 (4th Dist.1982) (finding the contamination of property due to use of rat poison to be within contemplation of ordinary consumer of rat poison). This principle precludes a finding that the lawn darts were unreasonably dangerous because the danger they presented, like the danger inherent in a knife or ax, was obvious.

In *Pitts v. Basile*, 35 Ill.2d 49, 219 N.E.2d 472 (1966), the Supreme Court of Illinois dealt with a case almost identical to the present one. In the present case an eight-year old girl threw the lawn dart that injured plaintiff. In *Pitts* an eight-year old boy threw a dart that injured a six-year old plaintiff. The court in *Pitts* refused to find the dart, even though sold as a child's toy, to be inherently dangerous. The court wrote:

> There are many things used by children that may be said to be unsafe when used for the purpose for which they are intended. A baseball, a baseball bat, a pen knife, a Boy Scout hatchet, a bicycle, all have the capacity to injure the user or others in the course of their normal use. They are not, however, to be categorized as "dangerous instrumentalities."

*Id.* at 51–52, 219 N.E.2d at 474. The court found that it was inconceivable that the child who was using the darts was not aware of their potential to cause injury.

The holding in *Pitts*, dealing with target darts, was the basis for a ruling by the Supreme Court of Oklahoma that lawn darts produced by defendant Regent were not properly the subject of a strict liability

claim. *See Atkins v. Arlans Department Store,* 522 P.2d 1020 (Okla.1974). The court in *Atkins,* after quoting at length from *Pitts* and citing another Illinois case, specifically found that the lawn darts contained no dangers beyond those contemplated by the ordinary consumer. *Id.* at 1022.

■ Because the dangers involved with lawn darts were inherently obvious, Illinois holds them to be not unreasonably dangerous. The claim in Count IV, premised upon strict liability, therefore, is dismissed.

### Count V

This court previously dismissed Count V, finding that pendent party jurisdiction over this count, as with Count IV, was not inappropriate. Because the Bradfords were named in third party complaints alleging negligence, however, the court reinstated Count V under its ancillary jurisdiction. *See Aimone v. Walgreen's Co.,* 83 C 4724, Order (N.D.Ill. March 26, 1984). The Bradfords have now moved to dismiss Count V.

Count V of the complaint sounds in negligence. The Bradfords claim that plaintiff was a licensee on their property and as such they owed only the duty to avoid willful and wanton misconduct. They cite *Marcovitz v. Hergenrether,* 302 Ill. 162, 134 N.E. 85 (1922), and *Dent v. Great Atlantic & Pacific Tea Co.,* 4 Ill.App.2d 500, 124 N.E.2d 360 (4th Dist.1955). That might indeed be the proper rule in this case were plaintiff an adult.

■ Plaintiff, however, at the time of the accident, was only two and-a-half years old. In *Kahn v. James Burton Co.,* 5 Ill.2d 602, 614, 126 N.E.2d 836 (1955), the Supreme Court of Illinois did away with the licensee, invitee distinction when dealing with children. The court held that in cases where a landowner could reasonably have anticipated that children would be on the landowner's property, "the only proper basis for decision in such cases dealing with personal injuries to children are the customary rules of ordinary negligence cases." *Id.* at 624, 126 N.E.2d at 841. *See also Cope v. Doe,* 102 Ill.2d 278, 80 Ill.Dec.

40, 464 N.E.2d 1023, (1984); *Corcoran v. Village of Libertyville,* 73 Ill.2d 316, 325, 22 Ill.Dec. 701, 703–4, 383 N.E.2d 177, 179–80 (1978). This standard applies to children who are social guests.

> [W]hen an infant-social guest is injured on his host's property, the customary rules of ordinary negligence apply, with the true test of liability to be the foreseeability of injury to the child.

*Lance v. Senior,* 66 Ill.App.2d 41, 45–46, 213 N.E.2d 616, 618 (5th Dist.1966), *rev'd on other grounds,* 36 Ill.2d 516, 224 N.E.2d 231 (1967).

The Bradfords, therefore, can be liable for negligence. The test is whether the injury to plaintiff was foreseeable. Without judging the foreseeability of plaintiff's injury, the motion to dismiss Count V is denied.

### Aimones

Mary Ann Aimone and George Aimone move to dismiss the counterclaim and third party claims filed against them, respectively. They base their motion on the grounds of parental immunity. The claims against the Aimones are predicated upon Illinois' Contribution Among Joint Tortfeasors Act, Ill.Rev.Stat. ch. 70, § 301 *et seq.* (1984). That Act provides:

> Where two or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them.

*Id.* at 302(a). The dispute here arises out of the term "subject to liability in tort." The Aimones say because of Illinois' parental immunity, they are not subject to liability in tort for their son's injury. The Illinois courts, however, have recently rejected that claim.

In *Doyle v. Rhodes,* 101 Ill.2d 1, 77 Ill. Dec. 759, 461 N.E.2d 382 (1984), the Supreme Court of Illinois interpreted the questioned language. After examining the judicial precursor to the Act, *Skinner v. Reed-Prentice Division Package Machin-*

ery Co., 70 Ill.2d 1, 15 Ill.Dec. 829, 374 N.E.2d 437 (1977), cert. denied, 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978), and the Act's legislative history, the court interpreted "subject to liability in tort" to focus "on the culpability of the parties rather than on the precise legal means by which the plaintiff was ultimately able to make each defendant compensate him for his loss." Doyle v. Rhodes, 101 Ill.2d at 14, 77 Ill.Dec. at 765, 461 N.E.2d at 388. In so interpreting the statute the court found that an employer, immune from tort liability for an employee's injuries through the Worker's Compensation laws, could still face liability through the Act. This result is in accord with the earlier appellate decisions finding liability under the Act even though immunity against a direct action existed. See Doyle v. Rhodes, 109 Ill.App.3d 590, 65 Ill.Dec. 40, 440 N.E.2d 895 (2d Dist.1982) (employer's immunity through Worker's Compensation laws); Larson v. Buschkamp, 105 Ill.App.3d 965, 61 Ill.Dec. 732, 435 N.E.2d 221 (2d Dist. 1982) (parental immunity); Wirth v. City of Highland Park, 102 Ill.App.3d 1074, 58 Ill.Dec. 294, 430 N.E.2d 236 (2d Dist.1981) (spousal immunity). But see Lake Motor Freight, Inc. v. Randy Trucking, Inc., 118 Ill.App.3d 626, 74 Ill.Dec. 192, 455 N.E.2d 222 (1st Dist.1983) (dealing with employer immunity and reversed by the Supreme Court in Doyle ).

Two decisions dealing specifically with this precise question have recently been handed down by the Illinois appellate courts. See Moon v. Thompson, 127 Ill. App.3d 657, 82 Ill.Dec. 831, 469 N.E.2d 365 (1st Dist.1984); Hartigan v. Beery, 128 Ill.App.3d 195, 83 Ill.Dec. 445, 470 N.E.2d 571 (1st Dist.1984). In Hartigan, the minor plaintiff injured himself while he and his parents were visiting defendants on defendants' property. While the adults were talking plaintiff went to play with the other children in the yard and cut himself with a knife lying on top of a barbeque grill. Plaintiff, by his father, sued. Defendants counterclaimed against the father and brought a third party action against the mother claiming negligent supervision. These claims were brought under the Contribution Among Joint Tortfeasors Act. The court, citing Doyle, Wirth and Larson, held that parental immunity was not a bar to a claim under the statute alleging negligent supervision by parents. The court stated: "The use of parent-child immunity to insulate the parents from a contribution action is simply not consistent with our present system of equitable apportionment of fault." Hartigan, supra, 128 Ill.App.3d at 199, 83 Ill.Dec. 449, 470 N.E.2d 571.

The contribution statute is concerned with culpability and not the ability of the injured to actually receive compensation. Accordingly, immunity doctrines do not automatically come into play. Walgreen's and Regent claim the Aimones negligently supervised their son. They claim the Aimones are at least partly culpable for the accident. Pursuant to Doyle and Hartigan, the Aimones can properly be held liable under the Act.

### Conclusion

Defendant Regent's motion for summary judgment on Counts III and IV is granted. All other motions are denied.