FIRST NATIONAL BANK OF DWIGHT, a National Banking Corporation, as Guardian of the Estate of Jeramie Aimone, a Minor, Plaintiff-Appellant,

v.

REGENT SPORTS CORPORATION, Defendant-Appellee.

No. 85–2834.

United States Court of Appeals, Seventh Circuit.

Argued April 16, 1986.

Decided Oct. 22, 1986.

Paul E. Root, Gomien & Root, Morris, Ill., for plaintiff-appellant.

John R. Fanone, Robert D. Kolar & Associates, Ltd., Chicago, Ill., for defendant-appellee.

* The Honorable James E. Noland, Chief District Judge of the Southern District of Indiana, is sitting by designation.

Before WOOD, COFFEY, Circuit Judges, and NOLAND, Chief District Judge.*

COFFEY, Circuit Judge.

First National Bank of Dwight (First National), as guardian for Jeramie Aimone, brought this action against Regent Sports Corporation (Regent) alleging that Regent was liable under the Federal Hazardous Substances Act, 15 U.S.C. § 1261 *et seq.*, as amended, for the serious injuries sustained by Jeramie Aimone. First National also alleges that Regent was liable for Jeramie's injuries under theories of strict tort liability, implied warranty of merchantability, and negligence. The district court granted Regent's motion for summary judgment on the federal claim under 15 U.S.C. § 1261 *et seq.*, and on the strict liability claim, as well as the implied warranty and negligence claims. First National appeals from the district court's granting of summary judgment. We affirm in part and reverse in part.

## I

On July 2, 1982, Joanne Farmer went to a Walgreen's Company store and purchased a set of "Slider Jarts" manufactured by the Regent Sports Corporation (Regent) for her daughter, Paula Bradford. Paula reimbursed her mother for the "Jarts." "Slider Jarts" are used in a lawn dart game in which players toss the "Jarts," or lawn darts, into a ring placed on the ground some distance from the players. On July 4, 1982, Paula and her husband hosted a picnic at their home which was attended by George and Mary Ann Aimone and their son, Jeramie, two and one-half years of age. During the picnic, some children took out the "Slider Jarts" and began playing with them. Cindy Jo Harp, Joann Farmer's eight-year old granddaughter, threw one of the "Jarts" into the air. On its descent to the ground, the lawn dart struck Jeramie in the head, entered his skull, causing permanent brain damage.

Jeramie through his guardian, First National, and parents filed suit against Walgreen's Company, Regent Sports Corporation, Paula Bradford and her husband. On appeal, we are concerned only with the claims against Regent.

## II

Jeramie Aimone initially appeals the summary judgment granted by the district court to Regent on Count III of his complaint. Jeramie brought Count III under 15 U.S.C. § 2072(a),[1] alleging that Regent introduced a product into interstate commerce in violation of the regulations promulgated by the Consumer Product Safety Commission, specifically 16 C.F.R. § 1500.-18(a)(4).[2] The Consumer Product Safety Commission has the authority to issue these regulations under 15 U.S.C. § 1261 (1982).

1. Section 2072(a) states:
   (a) Any person who shall sustain injury by reason of any knowing (including willful) violation of a consumer product safety rule, or any other rule or order issued by the Commission may sue any person who knowingly (including willfully) violated any such rule or order in any district court of the United States in the district in which the defendant resides or is found or has an agent, shall recover damages sustained, and may, if the court determines it to be in the interest of justice, recover the costs of suit, including reasonable attorneys' fees (determined in accordance with section 2060(f) of this title) and reasonable expert witnesses' fees: *Provided,* That the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, unless such action is brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

2. 16 C.F.R. § 1500.18(a)(4) states:
   (a) *Toys and other children's articles presenting mechanical hazards.* Under the authority of section 2(f)(1)(D) of the act and pursuant to provisions of section 3(c) of the act, the Commission has determined that the following types of toys or other articles intended for use by children present a mechanical hazard within the meaning of section 2(s) of the act because in normal use, or when subjected to reasonably foreseeable damage or abuse, the design or manufacture presents an unreasonable risk of personal injury or illness.

The district court may grant a summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c). The party moving for a summary judgment carries the burden of establishing that no genuine issue as to any material fact exists and that the movant is entitled to summary judgment as a matter of law. *See Goldstick v. ICM Realty,* 788 F.2d 456, 458 (7th Cir. 1986).

Pursuant to 16 C.F.R. § 1500.-3(b)(4)(i)(D),[3] all products determined by the Consumer Product Safety Commission to present mechanical hazards to children are categorized as "hazardous substances" and are banned from interstate commerce under 16 C.F.R. § 1500.3(b)(15)(i).[4] Under 16

\* \* \* \* \* \*

(4) Lawn darts and other similar sharp pointed toys usually intended for outdoor use and having the potential for causing puncture wound injury.

3. 16 C.F.R. § 1500.3(b)(4)(i)(D) states:
   (b) *Statutory definitions.* Except for the definitions given in section 2(c) and (d) of the act, which are obsolete, the definitions set forth in section 2 of the act are applicable to this part and are repeated for convenience as follows (some of these statutory definitions are interpreted, supplemented, or provided with alternatives in paragraph (c) of this section):
   \* \* \* \* \* \*
   (4)(i) "Hazardous substance" means
   \* \* \* \* \* \*
   (D) Any toy or other article intended for use by children which the Commission by regulation determines, in accordance with section 3(c) of the act, presents an electrical, mechanical, or thermal hazard.

4. 16 C.F.R. § 1500.3(b)(15)(i)(A) states:
   (b) *Statutory definitions.* Except for the definitions given in section 2(c) and (d) of the act, which are obsolete, the definitions set forth in section 2 of the act are applicable to this part and are repeated for convenience as follows (some of these statutory definitions are interpreted, supplemented, or provided with alternatives in paragraph (c) of this section):
   \* \* \* \* \* \*

C.F.R. § 1500.18(a)(4), lawn darts such as "Slider Jarts" are classified as mechanical hazards and are consequently banned from interstate commerce because they are unsuitable for children.[5] While lawn darts cannot be sold for use by children, they may be marketed under 16 C.F.R. § 1500.-86(a)(3)(i)(ii)(iii) as a game of skill for adults.[6]

■ Regent repeats the argument it made before the district court now on appeal that, despite the fact that the "Slider Jarts" may have been improperly resold by Walgreen's, Regent's "product satisfied all the requirements for which it [Regent] could be held responsible and, therefore, that it [Regent] did not commit a 'knowing (including willful)' violation of the regulation as required by section 2072." *Aimone by Aimone v. Walgreen's Co.*, 601 F.Supp. 507, 513 (D.C.Ill.1985). Lawn darts cannot be sold in toy stores or store departments dealing predominantly in toys and other children's articles. *See* 16 C.F.R. § 1500.-86(a)(3)(iii). Regent's invoices to retailers selling "Slider Jarts" state "Not to be sold in toy or children's departments." 601 F.Supp. at 513. In the catalogs distributed by Regent, the description of the lawn dart game clearly set forth: "Not a toy. (Not to be sold in toy departments)." Regent also has clearly imprinted on the outside of its shipping cartons: "Not to be sold in toy departments." *Id.* Federal regulations

not only prohibit the sale of lawn darts in toy stores or toy departments but also in "store departments dealing predominantly in toys and other children's articles." 16 C.F.R. § 1500.86(a)(3)(iii). By specifically stating that "Slider Jarts" are not to be sold in toy stores, Regent does not exclude the possibility that the "Slider Jarts" may be sold in store departments dealing primarily in "other children's articles." In its Answer to Interrogatories, Regent did admit selling its Jarts to sporting goods stores. A question arises as to whether sporting goods fall into the category of "other children's articles." In a House Report treating 15 U.S.C. § 1261, the statute which grants authority to the Consumer Product Safety Commission to ban dangerous items, a House Committee stated that the phrase "other articles intended for the use of children" used in 15 U.S.C. § 1261 included:

> "games; dolls, stuffed animals, and other toys; swings, slides, seesaws, and other playground equipment; sleds, toboggans, bicycles, tricycles, and other recreational equipment; infants' carriages and strollers; slatted, netted, or lidded cribs and other nursery equipment; children's furniture; science and construction kits; children's footwear; and sports equipment."

H.R.Rep. 91–389, 91st Cong., 1st Sess. 9 (1969), *reprinted in* U.S.Code Cong. & Admin.News 1969, pp. 1231, 1236. Given the

---

(15)(i) "Banned hazardous substance" means:
(A) Any toy, or other article intended for use by children, which is a hazardous substance, or which bears or contains a hazardous substance in such manner as to be susceptible of access by a child to whom such toy or other article is entrusted ...

5. See footnote 1 for the text of 16 C.F.R. § 1500.18(a)(4).

6. 16 C.F.R. § 1500.86(a)(3)(i)(ii)(iii) states:
(a) The term "banned hazardous substance" as used in section 2(q)(1)(A) of the act (repeated in § 1500.3(b)(15)(i)(A)) of the act shall not apply to the following articles:
  *   *   *   *   *   *
(3) Lawn darts and similar sharp-pointed articles not intended for *toy use and marketed solely as a game of skill for adults*, provided such articles:

(i) Bear the following statement on the front of the panel of the carton and on any accompanying literature:
WARNING Not a toy for use by children. May cause serious or fatal injury. Read instructions carefully. Keep out of reach of children.
Such statement shall be printed in sharply contrasting color within a borderline and in letters at least one-quarter inch high on the main panel of the container and at least one-eighth inch high on all accompanying literature.
(ii) Include in the instructions and rules clear and adequate directions and warnings for safe use including a warning against use when any person or animal is in the vicinity of the intended plan or target area.
(iii) *Are not sold by toy stores or store departments dealing predominantly in toys and other children's articles.*

similarity between the phrase used in 15 U.S.C. § 1261 and the regulation promulgated by the Consumer Product Safety Commission, 16 C.F.R. § 1500.86(3)(iii), it is obvious that sporting goods are "other children's articles" under 16 C.F.R. § 1500.-86(3)(iii). In this case, the "Slider Jart" that injured Jeramie was sold in the "sporting goods" section of a Walgreen's Company store. Thus, a question of fact exists as to whether Regent knowingly violated 16 C.F.R. § 1500.86(3)(iii) in marketing their "Slider Jarts" as sporting goods.

To be liable under 15 U.S.C. § 2072(a), Regent must have knowingly violated 16 C.F.R. § 1500.86(a)(3). The district court stated:

"It is clear that Regent took a number of precautions in distributing the lawn darts, whether or not the darts were improperly retailed by Walgreen's. It made it clear in its catalog, invoices and cartons, that the darts were not to be sold with toys. It purposely determined not to sell the product to toy stores. Walgreen's, to which it did sell, deals primarily in drugs, cosmetics and adult items. In addition, Regent delivered the product not to individual stores but to Walgreen's warehouses."

601 F.Supp. at 513–14. While Regent did take precautions in distributing its lawn darts, its marketing practices may have resulted in "Slider Jarts" being sold in violation of 16 C.F.R. § 1500.86(3)(iii). In his motion for reconsideration, Jeramie presented evidence that Regent sold its "Slider Jarts" as part of a "5–Game Combination" package which also included badminton, volleyball, backyard tennis, and rubber horseshoe games, all games frequently played by children. The sale of lawn darts with children's articles violates 16 C.F.R. § 1500.86(3)(iii). Although the lawn dart that injured the plaintiff in this case did not come from a "5–Game Combination" package, such packaging is evidence that Regent conceivably may have indirectly violated 16 C.F.R. § 1500.86(3)(iii) by promoting the sale of lawn darts as

athletic equipment suitable for the use of children.

Appellant also points out that Regent's instruction sheet included in the box with the Jart game detailing the use of the "Slider Jarts" may have violated 16 C.F.R. § 1500.86(3)(ii). In its instructions Regent states:

"ALWAYS OBSERVE RULES OF SAFETY! All participants must stand behind the players tossing Jarts. The area in front and to the sides of the players must be clear of any children, adults, or pets. *In the event any adult permits a child or minor to participate in this sport, it is necessary to obtain parents' or legal guardian's consent.* Even then, careful adult supervision by the parents or legal guardian is required."

Instructions to "Slider Jart" game.

The district court found that "it cannot be concluded from the instruction sheet that the same was intended for use by children." Mem. Op. & Or. 5/7/85, p. 2. The court went on to say that "Regent took into account that no matter what the game, whether it involves darts or some other hazard, some adults will let some children participate." *Id.* Whether or not some reader will conclude after reading these instructions that children may safely use "Slider Jarts" is a question of fact for a jury. Accordingly, we make no comment on whether Jeramie should prevail. We limit our holding and state that the district court should not have granted summary judgment on Jeramie's claim that Regent violated 16 C.F.R. § 1500.86(3)(iii).

### III

Jeramie through First National also appeals the summary judgment granted to Regent on his strict tort liability claim. The Illinois Supreme Court adopted the theory of strict products liability in *Suvada v. White Motor Company*, 32 Ill.2d 612, 210 N.E.2d 182 (1965). In *Suvada*, the court adopted the position taken in section 402A of the American Law Institute's revised

Restatement of the Law of Torts. Quoting from the Restatement, the court stated:

> " '(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> '(a) the seller is engaged in the business of selling such a product, and
>
> '(b) it is expected to reach the user or consumer in the condition in which it is sold.
>
> '(2) The rule stated the subsection (1) applies although
>
> '(a) the seller has exercised all possible care in the preparation and sale of his product, and
>
> '(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.' "

*Suvada v. White Motor Company*, 32 Ill.2d 612, 210 N.E.2d 182 (1965), *quoting* RESTATEMENT (SECOND) OF TORTS § 402A (1964). Thus, under Illinois law, "to recover in strict liability, the injury must result from a condition of the product, the condition must be unreasonably dangerous and the condition must have existed at the time the product left the manufacturer's control." *Hunt v. Blasius*, 74 Ill.2d 203, 210, 23 Ill.Dec. 574, 384 N.E.2d 368 (1978). On appeal, Jeramie claims that the "Slider Jart" was unreasonably dangerous because Regent failed to provide adequate warnings. Appellant's Brief at 23. "It is well recognized that a failure to warn of a product's dangerous propensities may serve as the basis for holding a manufacturer or seller strictly liable in tort." *Woodill v. Parke Davis & Co.*, 79 Ill.2d 26, 37 Ill.Dec. 304, 306, 402 N.E.2d 194, 196 (1980). In Illinois, "[t]he adequacy of warnings ... usually present jury questions." *Palmer v. Avco Distributing Corporation*, 82 Ill.2d 211, 45 Ill.Dec. 377, 362, 412 N.E.2d 959, 964 (1980) (citations omitted). "Other jurisdictions have recognized that warnings could be inadequate, for example, if they did not specify the risk presented by the product, if they did not provide the reason for the warning or if they did not reach foreseeable users." *Palmer v. Avco Distributing Corp.*, 82 Ill.2d 211, 45 Ill.Dec. 377, 362, 412 N.E.2d 959, 964 (1980) (citations omitted).

In order for a product to be classified as unreasonably dangerous "[t]he article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Restatement (Second) of Torts § 402A comment i (1964). *See also Camp Creek Duck Farm, Inc. v. Shell Oil Company*, 103 Ill.App.3d 81, 58 Ill.Dec. 443, 430 N.E.2d 385 (1982). In *Hunt v. Blasius*, 74 Ill.2d 203, 211–12, 23 Ill.Dec. 574, 578, 384 N.E.2d 368, 372 (1978), the Illinois Supreme Court stated that:

> "Virtually any product is capable of producing injury when put to certain uses or misuses.... Injuries are not compensable in products liability if they derive merely from those inherent properties of a product which are obvious to all who come in contact with the product. The injuries must derive from a distinct defect in the product, a defect which subjects those exposed to the product to an *unreasonable* risk of harm. The Restatement (Second) of Torts concludes that strict liability applies only when the product is 'dangerous to an extent *beyond* that which would be contemplated by the ordinary [person] ..., with the ordinary knowledge common to the community as to its characteristics.' "

74 Ill.2d 203, 211–12, 23 Ill.Dec. 574, 578, 384 N.E.2d 368, 372 (1978). In rendering its decision, the district court relied on *Pitts v. Basile*, 35 Ill.2d 49, 219 N.E.2d 472 (1966). In that case, the Illinois Supreme Court stated:

> "In this court, however, the plaintiff urges that the defendants' 'non-defective' dart manifestly was not safe when used by small children for the purpose for which it was intended. The dart in question was intended to be thrown at

various objects * * *. Its propensity to cause serious injury, particularly to the eyes, was demonstrated by the very injury suffered by the infant plaintiff in the instant case."

"There are many things used by children that may be said to be unsafe when used for the purpose for which they are intended. A baseball, a baseball bat, a pen knife, a Boy Scout hatchet, a bicycle, all have the capacity to injure the user or others in the course of their normal use. They are not, however, to be categorized as 'dangerous instrumentalities....'"

"'To us it is simply inconceivable that a 10–year-old boy, much less his mother, would be unacquainted with the use of so common an article as the one here in question.'"

35 Ill.2d 49, 51–52, 219 N.E.2d 472, 474 (citations omitted). In *Pitts,* a child struck by a dart thrown by another child, who had purchased the dart at a neighborhood grocery, brought an action against the wholesaler of the dart and the retailers, who operated the grocery. Although the *Pitts* decision was based on a theory of negligence, the case makes it clear that the Illinois courts consider that the danger inherent in a dart should have been obvious to a child of ten years of age. In a similar Oklahoma case based on strict liability in which a child was injured by a lawn dart, the court there, relying on *Pitts,* stated:

"There are many toys and playthings, perfectly harmless and inoffensive in themselves, but whose common use can be perverted into a dangerous use or design, and there are very few of the most harmless toys which cannot be used to injure another. The dart's propensities to cause injury is demonstrated by the injury sustained but the fact that an injury was sustained does not necessarily mean that the manufacturer or retailer are liable for those injuries."

*Atkins v. Arlans Department Store of Norman,* 522 P.2d 1020, 1022 (Okla.1974). In *Martin v. Harrington and Richardson,* 743 F.2d 1200 (7th Cir.1984), this court in interpreting Illinois law stated:

"Under Illinois law, a product is 'unreasonably dangerous' when it is 'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.' A product may be unreasonably dangerous because of a design or manufacturing defect or because of failure to warn of a danger posed by the product of which the average consumer would not already be aware. A nondefective product that presents a danger that the average consumer would recognize does not give rise to strict liability."

743 F.2d 1200, 1202 (citations omitted). *See also Garrison v. Heublein, Inc.,* 673 F.2d 189 (7th Cir.1982) (Illinois law does not require warnings on alcoholic beverages as dangers posed by alcohol are common knowledge).

Regent promoted the game of "Slider Jarts" as a game of skill for adults. Regent argues that the lawn darts were not unreasonably dangerous for their intended use. The district court held that "because the dangers involved with lawn darts were inherently obvious, Illinois holds them to be not unreasonably dangerous." 601 F.Supp. 507, 515. We agree with the district court that the dangers presented by "Slider Jarts" should be obvious even to children of the tender age of eight.

The "Slider Jarts" also cannot be held to be an unreasonably dangerous product due to a failure to warn. Regent printed the following warnings on the "Slider Jart" itself in raised letters.

WARNING

NOT A TOY FOR USE BY CHILDREN

MAY CAUSE SERIOUS OR
FATAL INJURY

READ INSTRUCTIONS CAREFULLY

KEEP OUT OF REACH OF
CHILDREN.

Affidavit Exhibit—Motion for Reconsideration. These warnings were also repeated

on Regent's shipping cartons, the game box, and in Regent's instruction booklet. The district court stated that "it can hardly be said that defendant's warnings were insufficient, in light of their presence on the box, on the instruction sheets and on the Jarts themselves." Mem.Op. & Or. 5/7/85, p. 5. We agree with this finding and hold that the district court's grant of summary judgment on First National's strict liability claim was proper.

## IV

Jeramie through First National further appeals the district court's grant of summary judgment in favor of Regent on Count VII of the amended complaint. Count VII of the amended complaint alleged that Regent breached an implied warranty of merchantability. The district court expressed some doubt as to whether Jeramie could succeed under a theory of implied warranty because Jeramie might not be in privity of contract with Regent as required by Illinois law. See Ill.Rev.Stat. ch. 26, ¶ 2–318. However, we need not reach this question because our decision to affirm the district court's decision on the strict liability claim mandates that we affirm the district court's decision to grant summary judgment on the breach of implied warranty claim. In Illinois, as long as a plaintiff meets certain privity requirements, the issue in a products liability suit brought on breach of warranty is essentially the same as one brought under strict tort liability theory. *Nave v. Rainbo Tire Service, Inc.*, 123 Ill.App.3d 585, 78 Ill.Dec. 501, 462 N.E.2d 620 (1984). The inquiry is whether the product is "fit for the ordinary purposes for which such goods are used." Ill.Rev.Stat. ch. 26, ¶ 2–314(2)(c). The Illinois courts have found this inquiry to be practically the same as determining whether an item was a "defective product unreasonably dangerous," the test for liability under strict tort liability theory. In *Dunham v. Vaughan & Bushnell Manufacturing Co.*, 86 Ill.App.2d 315, 333, 229 N.E.2d 684 (1967), *aff'd* 42 Ill.2d 339, 247 N.E.2d 401 (1969), the court said "[t]he strict liability theory is essentially the liability of implied warranty divested of the contract doctrines of privity, disclaimer and notice." *Id.* See also *Nave v. Rainbo Tire Service, Inc.*, 123 Ill.App.3d 585, 78 Ill.Dec. 501, 506, 462 N.E.2d 620, 625 (1984). Since we held that Regent is not liable under the theory of strict tort liability, we hold that Regent did not breach an implied warranty of merchantability and that the district court's grant of summary judgment in favor of Regent on Count VII of the amended complaint was proper.

## V

■ Finally, Jeramie through First National appeals the district court's grant of summary judgment in favor of Regent on Count VIII of the amended complaint. Count VIII of the amended complaint alleged that Jeramie's injuries resulted from Regent's negligence. The district court found that "in this factual situation Regent owed no duty to Jeramie." 619 F.Supp. 820, 823 (N.D.Ill.1985). In Illinois, no duty to the plaintiff exists if it is not foreseeable that the defendant's conduct would create a risk of harm to the plaintiff. *Osborne v. Sprowls*, 84 Ill.2d 390, 50 Ill.Dec. 645, 419 N.E.2d 913 (1981). Count VIII of the amended complaint alleged that Regent was negligent because it placed "Slider Jarts" on the market. In *Maramba v. Neuman*, 82 Ill.App.2d 95, 227 N.E.2d 80 (1967), the Illinois Appellate Court affirmed a trial court's dismissal of a complaint alleging that a manufacturer was negligent for placing a boomerang on the market. The court stated:

"We conclude that a boomerang, which is used by children, is not a dangerous instrumentality as such, merely because after it is thrown its flight cannot be controlled, any more than a baseball, a dart or many other articles, which are classified as toys, can be held to be dangerous instrumentalities."

"We further conclude that an injury occasioned by the use of the boomerang in question by an inexperienced child, even where the merchant could reason-

ably have foreseen that the boomerang was to be used by that ten-year-old child, does not impose liability upon him."

227 N.E.2d at 83–84. Similarly, in *Pitts v. Basile*, 35 Ill.2d 49, 219 N.E.2d 472 (1966), the Illinois Supreme Court held that a wholesaler was not negligent for selling darts to retailers and consequently was not liable to the plaintiff who was injured by a dart which the wholesaler had marketed. The present case is analogous to the *Pitts* case in that Regent, acting as a wholesaler, distributed the lawn dart which injured Jeramie. The district court concluded that "Regent did not negligently place a dangerous or defective item on the market because the lawn darts are not unreasonably dangerous under Illinois law and were not defective." 619 F.Supp. 820, 824.

Count VIII of the amended complaint also alleged that Regent negligently failed to provide adequate warnings for the use of "Slider Jarts." Regent placed warnings not only in the instructions to the game of "Slider Jarts" but also on the box in which the "Jarts" were sold and on the "Slider Jarts" themselves. The warning on the lawn dart itself stated that the dart "may cause serious or fatal injury." The warning went further and directed "keep out of reach of children." Further, Regent structured its marketing practices to avoid selling the "Slider Jarts" to children. Regent did not sell to toy stores and informed retailers not to sell the "Slider Jarts" in toy departments. The district court found that "Regent took enough precautions to legally shift the responsibility for Jeramie's injuries to others." 619 F.Supp. at 824. We agree and hold that the district court properly granted summary judgment for Regent on Count VIII of the amended complaint.

## VI

The judgment of the district court is AFFIRMED IN PART and REVERSED IN PART. We remand for proceedings consistent with this opinion.