Leroy FAUCETT, Plaintiff–Appellant,

v.

INGERSOLL–RAND MINING & MA-
CHINERY COMPANY, A DIVISION
OF INGERSOLL–RAND COMPANY,
Defendant–Appellee.

No. 91–2310.

United States Court of Appeals,
Seventh Circuit.

Argüed March 4, 1992.

Decided April 2, 1992.

Thomas Q. Keefe, Jr., Harriet H. Hamil-
ton (argued), Cook, Shevlin, Keefe, Ysursa,

Brauer & Bartholomew, Belleville, Ill., for plaintiff-appellant.

John L. McMullin, A.J. Bronsky, T. Michael Ward (argued), Brown & James, St. Louis, Mo., for defendant-appellee.

Before CUMMINGS and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUMMINGS, Circuit Judge.

Leroy Faucett brought a strict products liability claim in state court against defendant Ingersoll–Rand Mining & Machinery Company (Ingersoll–Rand). The case was removed to federal court where the district judge granted summary judgment in favor of the defendant. The plaintiff now appeals.

## I. Background

Faucett was an employee of the Peabody Coal Company at the River King Underground Mine in St. Clair County, Illinois. He alleges that he slipped and hurt his back while entering the passenger compartment of a roof-bolter manufactured by Ingersoll–Rand. A roof-bolter is an electric and hydraulic coal mining machine used to insert steel bolts into the roof of the mine to prevent the roof from caving in. It is uncontested that Faucett slipped on hydraulic fluid from the roof-bolter's hydraulic system which had leaked into the operator's compartment.

At his deposition, plaintiff's expert, H. Boulter Kelsey, Jr., testified that "it's virtually inevitable at some point in time a leak will develop." He admitted that he had never seen a hydraulic system that did not leak. He characterized hydraulic fitting leakage as "an incredibly common occurrence." Kelsey also testified that he believed the roof-bolter was hazardous because the floor of the operator's compartment was not equipped with a solid metal grating. Such a grating, he explained, would be inexpensive to install and would make the floor essentially a non-slip surface. He also contended that the roof-bolter was defective since the hydraulic valving was inside the operator's compart-ment instead of outside, thereby allowing hydraulic fluid to drip onto the floor of the operator's compartment. Finally, he testified that the fittings on the hosing were improper for mining conditions.

Faucett testified at his deposition that he had been a roof-bolter operator for 14 years and that he knew roof-bolters had a leakage problem. He was aware that the floor of the roof-bolter in question could be slippery, and he knew of another miner who had slipped and fallen in the same roof-bolter in the past. On the date of his alleged injury, Faucett knew there was a hydraulic leak in the roof-bolter, and testified that he put rock dust on the floor of the operator's compartment to absorb the oil and that a repairman had tried to fix the leak.

Relying heavily on the testimony of the plaintiff's expert as to the inevitable characteristic of hydraulic leaks, the district court held as a matter of law that the roof-bolter was not unreasonably dangerous, and granted the defendant's motion for summary judgment. We reverse.

## II. Jurisdiction

As an initial matter, Faucett disputes the district court's diversity jurisdiction, claiming that complete diversity did not exist at the time of removal. Faucett filed a two-count complaint in Illinois state court. Count 1 alleged a strict products liability claim against Ingersoll–Rand. Count 2 alleged a negligence claim against Lendell Minor, a repairman. Ingersoll–Rand removed the case to federal court based on diversity jurisdiction. Even though both Faucett and Minor were residents of Illinois, Ingersoll–Rand alleged that the plaintiff had fraudulently joined Minor solely to defeat diversity jurisdiction. The district court agreed, and denied the plaintiff's motion to remand. The claim against Minor was later dismissed on summary judgment.

Under Fed.R.Civ.P. 21, the district court has the authority to dismiss parties who have been fraudulently joined. In order to sustain a claim of fraudulent joinder, "[t]he movant must show that there is no possibil-

ity that plaintiff could establish a cause of action against the resident defendant in state court." *S.A. Auto Lube, Inc. v. Jiffy Lube Int'l Inc.*, 842 F.2d 946, 950 (7th Cir.1988). Minor's uncontradicted affidavit, essentially stating that he has had absolutely nothing to do with any roof-bolters at the Peabody Mine, is sufficient to establish fraudulent joinder. The district court correctly asserted jurisdiction over this case.

### III. Analysis

#### A. Introduction

This court reviews *de novo* a district court's grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate if, after drawing all reasonable inferences in favor of the non-moving party, this court concludes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 320 (7th Cir.1992).

■ In order to prevail on a strict liability claim under Illinois law, a plaintiff must show that the injury resulted from a condition of the product, that the condition was unreasonably dangerous, and that the condition existed at the time the product left the manufacturer's control. *Suvada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182, 188 (1965).

■ The district court found that the plaintiff could not prove the "unreasonably dangerous" element, and therefore awarded judgment to the defendant. Under Illinois law, "[w]hether a product is unreasonably dangerous for failure to incorporate safety devices is ordinarily a question of fact which the jury should resolve." *Doser v. Savage Manufacturing and Sales, Inc.*, 142 Ill.2d 176, 154 Ill.Dec. 593, 598–99, 568 N.E.2d 814, 819–20 (1990).

#### B. Consumer Expectation Test v. Risk/Benefit Analysis

The parties dispute what precisely is the correct test to apply in determining whether a product is unreasonably dangerous. Ingersoll–Rand maintains that the "consumer expectation test" is the correct vehicle under Illinois law. The consumer expectation test defines an unreasonably dangerous product as one which is "dangerous to an extent beyond that which would be contemplated by the ordinary person with ordinary knowledge common to the community." *Miller v. Dvornik*, 149 Ill.App.3d 883, 103 Ill.Dec. 139, 142, 501 N.E.2d 160, 163 (1986). The defendant argues that since hydraulic leaks are an inherent propensity of the roof-bolter's hydraulic system, and since this propensity was obvious to the plaintiff, Faucett fails to meet the consumer expectation test.

The plaintiff, on the other hand, argues that Illinois law has moved beyond the consumer expectation test, and now also incorporates a "risk/benefit analysis." The risk/benefit analysis classifies a product as unreasonably dangerous when the evidence establishes that the product "could have been designed to prevent a foreseeable harm without hindering its function or increasing its price." *Palmer v. Avco Distributing Corp.*, 82 Ill.2d 211, 45 Ill.Dec. 377, 382, 412 N.E.2d 959, 964 (1980). Because accidents from the slippery floor were foreseeable and the plaintiff presented evidence of design alternatives that would not hinder the function or increase the price of the machine, Faucett argues that there is a disputed issue of fact for the jury on the unreasonably dangerous element. The defendant counters that the applicability of a risk/benefit analysis is doubtful under Illinois law, and certainly is inappropriate where the injured party is not an innocent third-party.

■ Until recently the risk/benefit analysis was an unstable doctrine in Illinois,[1] but it is now firmly implanted in Illinois products liability law. In *Lamkin*

---

1. See Presiding Justice Buckley's dissent in *Kutzler v. AMF Harley–Davidson*, 194 Ill.App.3d 273, 141 Ill.Dec. 190, 194, 550 N.E.2d 1236, 1240 (1990), for an excellent discussion of the uncertain status of the risk/benefit analysis in Illinois.

*v. Towner*, 138 Ill.2d 510, 150 Ill.Dec. 562, 570, 563 N.E.2d 449, 457 (1990), the Illinois Supreme Court acknowledged that a plaintiff may seek recovery under either the consumer expectation test or a risk/benefit analysis:

> A plaintiff may demonstrate that a product is defective in design, so as to subject a retailer and a manufacturer to strict liability for resulting injuries, in one of two ways: (1) by introducing evidence that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner or (2) by introducing evidence that the product's design proximately caused his injury and the defendant fails to prove on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs.

The Illinois Supreme Court has further explained:

> There is no concise definition of what constitutes an unreasonably dangerous condition. [Citation]. The question of whether a manufacturer must take various precautions so as not to produce an unreasonably dangerous product varies with the circumstances. The balancing of the likelihood and gravity of harm must be weighed against the burden of the precaution which would be effective to avoid the harm.

*Doser*, 154 Ill.Dec. at 598, 568 N.E.2d at 819 (quoting *Burke v. Illinois Power Co.*, 57 Ill.App.3d 498, 15 Ill.Dec. 670, 683, 373 N.E.2d 1354, 1367 (1978)). With respect to the defendant's argument that a risk/benefit analysis may apply only if an innocent third-party is injured, there is absolutely no support in the case law for this proposition. The status of the plaintiff as a third-party is irrelevant. *See, e.g., Kerns v. Engelke*, 76 Ill.2d 154, 28 Ill.Dec. 500, 390 N.E.2d 859 (1979) (employee injured while dismantling defective equipment and risk/benefit analysis applied).

■ Both the district court and the defendant make much of the fact that Faucett knew of the propensity of the roof-bolter to be slippery. Because he was aware of this propensity, it is asserted, the roof-bolter was not "dangerous to an extent *beyond* that which would be contemplated by the ordinary [person] ..., with the ordinary knowledge common to the community as to its characteristics." *Hunt v. Blasius*, 74 Ill.2d 203, 23 Ill.Dec. 574, 578, 384 N.E.2d 368, 372 (1978) (citation omitted). Although this language is more suitable for proof under the consumer expectation test, it is important to note that the Illinois Supreme Court has also stated that "[a] consumer may rightfully expect a product to *safely* do the job for which it was built." *Lamkin*, 150 Ill.Dec. at 571, 563 N.E.2d at 458 (emphasis added). In the present case, it is not clear that the roof-bolter was designed to "safely do the job for which it was built." Finally, since Illinois has adopted a system of comparative fault in strict liability cases, even if Faucett's knowledge is construed to mean that he assumed the risk of injury, this fact is not a bar to recovery; it can only be used to reduce a damage award. *Coney v. J.L.G. Industries, Inc.*, 97 Ill.2d 104, 73 Ill.Dec. 337, 454 N.E.2d 197 (1983).

### *IV. Conclusion*

■ Under a risk/benefit analysis, the plaintiff has raised a disputed issue of material fact as to whether the roof-bolter was unreasonably dangerous. The plaintiff's expert testified that installing metal grating, or moving the hydraulic valving outside of the operator's compartment would help eliminate the possibility of slipping on an oily floor. He also testified that the installation of metal grating is a low-cost alternative that would not hamper the function of the roof-bolter. This evidence is sufficient to withstand a motion for summary judgment. The district court's judgment is REVERSED and REMANDED for further proceedings consistent with this opinion.