991 F.2d 1334
 Prod.Liab.Rep. (CCH) P 13,467
Rodney TODD, as Special Administrator of the Estate of
Tiffany Todd, a deceased minor, Plaintiff-Appellant,
v.
SOCIETE BIC, a foreign corporation, and BIC Corporation, a
foreign corporation, Defendants-Appellees.
 No. 92-1201.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 19, 1992.
Decided April 27, 1993.
Order Granting Rehearing En Banc and
Vacating Opinion July 2, 1993.
 
 1
 Donald J. Nolan, Joseph T. McGuire (argued), Chicago, IL, for plaintiff-appellant.
 
 
 2
 Richard J. Rosenblum, Edward M. Rubin, Johnson & Bell, Jeffrey M. Rubin, David A. Bonoma, Pope & John, Thomas H. Fegan, Chicago, IL, Michael S. Ryan, William L. Moran (argued), Murnane, Conlin, White, Brandt & Hoffman, St. Paul, MN, for defendants-appellees.
 
 
 3
 Before CUMMINGS, and MANION, Circuit Judges, and KAUFMAN, Senior District Judge.*
 
 
 4
 FRANK A. KAUFMAN, Senior District Judge.
 
 
 5
 This case arises out of a tragedy in which twenty-three month old Tiffany Todd was killed in a fire started by another child, four year old Cori Smith. The fire occurred on March 27, 1988, at the home shared by the Todd and Smith families in Earleville, Illinois. Cori started the fire with a green BIC lighter manufactured by defendants which she found on a table in the living room.
 
 
 6
 At the time of the fire, the Todd family consisted of parents Rodney Todd, Sr. and Darlene Todd, and children Rodney Todd, Jr., Tiffany Todd, and Anya Rossi. The Smith family consisted of parents Herbert Smith and Kathy Smith, and children Nathan Smith, Erica Smith, and Cori Smith. All adults in the household smoked cigarettes. Herbert Smith used a Zippo lighter to light his cigarettes, Kathy Smith and Darlene Todd used BIC lighters or matches, and Rodney Todd, Sr. did not recall what he used to light his cigarettes. The within case was instituted by Rodney Todd, Sr., as Special Administrator of Tiffany's estate.
 
 
 7
 Sometime before 8:00 a.m. on March 27, 1988, Cori awoke and went into the living room of the house, where she found the green lighter on a table. She took the lighter and went upstairs to the bedroom where Tiffany Todd was sleeping and ignited some papers on the floor. Cori then went back downstairs, replaced the lighter, and got a glass of water in order to extinguish the fire. BIC contends that Nathan Smith, who was in the living room at the time watching cartoons, instructed Cori not to go upstairs with the water and that Cori left the glass of water downstairs. Plaintiff suggests that Cori may have gone upstairs with the water. At any rate, Cori went upstairs again and then came running back downstairs with Rodney Todd, Jr. screaming that there was smoke. The adults were alerted, and Rodney Todd, Sr. and Herbert Smith tried unsuccessfully to retrieve Tiffany from her room. Everyone in the house escaped to safety except Tiffany, who perished.
 
 
 8
 About a week prior to the fire, Cori had obtained a lighter and had started a small fire in her parents' bedroom. Also prior to the fire in which Tiffany was killed, Cori and the other children had been instructed by their parents concerning the dangers of fire and had been warned not to play with matches or lighters. Cori has admitted that she was aware of the danger of playing with matches and lighters prior to the fatal fire.
 
 
 9
 * In this diversity case plaintiff has proceeded in the United States District Court for the Northern District of Illinois under Illinois law pursuant to theories of strict liability in tort, negligence, and abnormally dangerous activities. The district court granted summary judgment in favor of BIC. Herein, plaintiff does not appeal with respect to his theory of abnormally dangerous activities but does appeal from the grant of summary judgment against him with respect to the theories of strict liability and negligence. In so doing, plaintiff asserts that the BIC lighter was unreasonably dangerous because it did not include enhanced child-resistant features and also because it did not provide adequate warnings. Although the lighter Cori used bore a warning label stating: "KEEP OUT OF REACH OF CHILDREN," plaintiff claims that that warning was inadequate, since it did not warn of the special danger to children in the three to five year age range, children who, even when warned about the dangers of fire and instructed not to play with matches or lighters, cannot be expected to have the self-control to heed such warnings and instructions.
 
 
 10
 For the purposes of its summary judgment motion, BIC, in the court below, conceded that it was foreseeable as of the date of the fire that a child of Cori's age might obtain and operate a lighter and that, as of that date, it was feasible to design and manufacture a lighter with enhanced child-resistant features. In fact, since the spring of 1992, BIC has marketed a lighter with child-resistant features. The lighter has an "over-and-up" design in which, in addition to the roll-and-press operation of the standard lighter, in which the user slides his or her thumb down the spark wheel and then presses down on the lever underneath to release butane and ignite the gas, the user also has to move a safety latch beneath the lever over and then up. That safety latch automatically returns to the locked position after each use. The BIC lighter, which is so designed, resulted from a BIC project to make its lighters more child-resistant which began in 1985.
 
 II
 
 11
 In granting summary judgment in favor of defendants on the strict liability in tort claim, the court below applied, pursuant to applicable Illinois law, the consumer-contemplation test, under which, in order for a product to be unreasonably dangerous and for the manufacturer to be subject to strict liability, the product must be " 'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.' " First National Bank of Dwight v. Regent Sports Corp., 803 F.2d 1431, 1436 (7th Cir.1986) (quoting Restatement (Second) of Torts § 402A, comment i (1964)). In that context, the district court posed the question of whether BIC owed plaintiff a duty to manufacture its lighters with child-proof devices, a question which the district court characterized as one of law for the court to decide. Answering the question, the court concluded that, as a matter of law, the BIC lighter was not unreasonably dangerous because of lack of child-resistant features or because of inadequacy of warning and granted summary judgment to BIC with respect to the strict liability claim. The district court also determined that the lighter performed in the manner expected of a lighter and that adults, the ordinary purchasers, are capable of contemplating the danger of the lighter's characteristics. The district court further concluded that the potential dangers posed by BIC's lighters were obvious and that that very obviousness of danger puts the user on notice. Cf. Killeen v. Harmon Grain Products, Inc., 11 Mass.App.Ct. 20, 413 N.E.2d 767 (1980) (manufacturer of cinnamon-flavored toothpicks not liable for injuries sustained by ten-year old girl who fell face down while sucking on one of defendant's toothpicks, since toothpicks are not unreasonably dangerous, in part because the very obviousness of their danger puts the user on notice). Accordingly, the court below took the position that not only was the warning on the lighter adequate, but also that BIC had no duty to warn because its lighters were not unreasonably dangerous and any danger which they posed was obvious. Further, the district court noted that had the warning on the lighter been heeded, the lighter could have been used safely. Thus, in effect, any failure to warn would have lacked proximate cause and any additional warnings could not have been expected to have prevented the accident, since, by their own testimony, the adults in the Smith/Todd household knew of and warned their children about the dangers of playing with lighters and Cori understood those dangers. The court inferred that the adult Todds and the adult Smiths understood the potential dangers of children playing with lighters.
 
 
 12
 The district court expressed the above summarized views in the course of granting summary judgment upon plaintiff's strict liability theory and then utilized the same lack of duty approach in awarding BIC summary judgment upon plaintiff's negligence claim.
 
 III
 
 13
 We review de novo a district court's grant of summary judgment. La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V., 914 F.2d 900, 905 (7th Cir.1990). "Summary judgment is appropriate only if, drawing all reasonable inferences in favor of the nonmoving party, we conclude that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 320 (7th Cir.1992).
 
 
 14
 Under Illinois law, in order to prevail upon his strict liability in tort claim, plaintiff must show that his "injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it [the product] left the manufacturer's control." Suvada v. White Motor Co., 32 Ill.2d 612, 210 N.E.2d 182, 188 (1965). Plaintiff easily meets his burden as to the first and third of those three elements. It is the second element which caused plaintiff to fail in the court below. A product may be defective in the way which makes it unreasonably dangerous for any of the following reasons: 1) a manufacturing flaw, 2) a failure of the manufacturer to adequately warn of a risk related to the way the product was designed, or 3) a defective design. W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 99, at 695 (5th ed. 1984). In the within case, the plaintiff alleges that the BIC lighter is unreasonably dangerous by reason of inadequacy of the warning and by reason of a defective design, namely the lack of child-resistant features. In Lamkin v. Towner, 138 Ill.2d 510, 150 Ill.Dec. 562, 570, 563 N.E.2d 449, 457 (1990), Illinois' highest court enunciated the ways in which a plaintiff may show the unreasonably dangerous condition of a product by reason of defective design. In Lamkin, that court has written:
 
 
 15
 A plaintiff may demonstrate that a product is defective in design, so as to subject a retailer and a manufacturer to strict liability for resulting injuries, in one of two ways: (1) by introducing evidence that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner or (2) by introducing evidence that the product's design proximately caused his injury and the defendant fails to prove that on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs.
 
 
 16
 Id. (emphasis added) (citations omitted). In the proceedings below, the district court, in determining that the BIC lighter was not unreasonably dangerous because of defective design, utilized only the first way, the consumer-contemplation test. In so doing, the district court failed to apply alternatively the risk-utility test.
 
 
 17
 BIC argues that where a mechanism is simple and the danger is obvious, only the consumer-contemplation test is applicable under Illinois law. However, the risk-utility test--and the extent of its applicability--is now well established in Illinois law. Faucett v. Ingersoll-Rand Min. & Machinery Co., 960 F.2d 653, 655 (7th Cir.1992). "[T]he consumer-contemplation test is inadequate as a basis for impugning the design of products with obvious dangers," although it is well-suited to "impugn the design of products with latent and unknowable risks where the benefits already outweigh the danger-in-fact." KEETON et al., supra, § 99, at 702. Thus, in effect, in a case like this one, the consumer-contemplation test is inadequate because, for one thing, under it, "a victim could never recover for harm suffered as a result of a design hazard that was open or obvious," even if the product "could easily have been designed safer without great expense or effect on the benefits or functions to be served by the product." Id. at 698.
 
 
 18
 BIC relies upon Scoby v. Vulcan-Hart Corp., 211 Ill.App.3d 106, 155 Ill.Dec. 536, 569 N.E.2d 1147 (4 Dist.1991) in support of BIC's contention that when a mechanism is simple and the danger is obvious, only the consumer-contemplation test is to be applied. Id. 155 Ill.Dec. at 540, 569 N.E.2d at 1151. In Scoby, a restaurant employee was injured when he slipped in the kitchen and his arm became submerged in a deep-fat fryer. Illinois' intermediate appellate court, in affirming the trial court's grant of summary judgment in favor of the manufacturer, applied only the consumer-contemplation test, and in so doing, BIC asserts, recognized that the parties had stipulated that safer alternative designs available at the time of the accident could have prevented the accident. BIC is mistaken. The parties in Scoby only stipulated that fryer covers were available and sold by the manufacturer and that if a cover had been on the fryer at the time of the accident, the employee's hand would not have come into contact with the oil in the fryer. Id. at 536-37, 569 N.E.2d at 1148-49. In fact, the covers were "not designed, manufactured, marketed, or sold by [the manufacturer] as ... safety device[s]." Id. at 537, 569 N.E.2d at 1149. Thus, there was no stipulation that safer alternative designs were available. Indeed, Illinois' intermediate appellate court seemingly suggested that safer alternative designs were not possible, stating: "Clearly, at times, efficient kitchen operation would require keeping a top off of the fryer." Id. at 540, 569 N.E.2d at 1151.
 
 
 19
 The lack of a safer alternative design is an important factor in determining whether the risk-utility test is applicable because "[t]he risk/benefit analysis classifies a product as unreasonably dangerous when the evidence establishes that the product 'could have been designed to prevent a foreseeable harm without hindering its function or increasing its price.' " Faucett, 960 F.2d at 655 (quoting Palmer v. Avco Distributing Corp., 82 Ill.2d 211, 45 Ill.Dec. 377, 382, 412 N.E.2d 959, 964 (1980)). In Lamkin, in which plaintiffs contended that a window screen was unreasonably dangerous for not being child-proof, the Supreme Court of Illinois reversed the lower court's denial of summary judgment because plaintiffs-appellees had failed to provide evidence that the window screen's design could have been altered to create a safer screen. Lamkin, 150 Ill.Dec. at 571, 563 N.E.2d at 458.
 
 
 20
 In Scoby, the appellate court wrote that "[s]omewhere, a line must be drawn beyond which the danger-utility test cannot be applied," and then proceeded itself to draw that line in that case, citing to the obviousness of the danger and the simplicity of the mechanism of the deep-fat fryer. Perhaps, then, the line may be drawn where the mechanism is so simple and the danger is so obvious that no other safer alternative design is possible, or at least where there is no evidence of such, as apparently was the case in Scoby and in Lamkin. Such is not the case here, however. In the within case, BIC conceded in the court below in the context of its summary judgment motion that a safer alternative design was feasible; and in fact, BIC has marketed such a child-resistant design since the spring of 1992. In this case, then, in determining whether the BIC lighter was unreasonably dangerous, the risk-utility test should be applied, particularly since the consumer-contemplation test is inadequate as a basis for impugning the design of products with obvious dangers. Furthermore, "[u]nder Illinois law, '[w]hether a product is unreasonably dangerous for failure to incorporate safety devices is ordinarily a question of fact which the jury should resolve.' " Faucett, 960 F.2d at 655 (quoting Doser v. Savage Manufacturing and Sales, Inc., 142 Ill.2d 176, 154 Ill.Dec. 593, 589-99, 568 N.E.2d 814, 819-20 (1990)). Given the concession of BIC that there was a feasible safer alternative design, there exists in this case a disputed issue of material fact regarding the weighing of the risks and benefits of the BIC lighter's design, which makes the grant of summary judgment inappropriate.
 
 
 21
 Plaintiff asserts that the district court's grant of summary judgment in favor of BIC was inappropriate not only because the district court failed to apply the risk-utility test, but also because the district court misapplied the consumer-contemplation test. In that connection, plaintiff argues that the latter test should have been applied from the point of view of all foreseeable users, including children, rather than only from the point of view of ordinary purchasers, namely adults.
 
 
 22
 Under the consumer-contemplation test, in order to find a product unreasonably dangerous and the manufacturer thereby strictly liable, the product must be " 'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.' " First National Bank of Dwight v. Regent Sports Corp., 803 F.2d 1431, 1436 (7th Cir.1986) (quoting Restatement (Second) of Torts § 402A, comment i (1964)). In order to expand the scope of protection to non-purchasers, "many courts have substituted 'ordinary user' or 'foreseeable user' for 'ordinary purchaser' thereby making it possible for victims to recover if the hazard was of a kind that would not have been contemplated by reasonably foreseeable users even though it was one that would have been contemplated by the ordinary purchaser-consumer." KEETON et al., supra, § 99, at 698. Illinois law applies the consumer-contemplation test from the point of view of foreseeable users, defining an unreasonably dangerous condition as "one which is unsafe with respect to a foreseeable use, or one which is 'objectively reasonable' to expect, a determination generally left to the jury." Pierce v. Hobart Corp., 159 Ill.App.3d 31, 111 Ill.Dec. 110, 112, 512 N.E.2d 14, 16 (1 Dist.1987) (quoting Winnett v. Winnett, 57 Ill.2d 7, 310 N.E.2d 1, 5 (1974)). In Winnett, the Supreme Court of Illinois ruled that "the liability of a manufacturer properly encompasses only those individuals to whom injury from a defective product may reasonably be foreseen and only those situations where the product is being used for the purpose for which it was intended or for which it is reasonably foreseeable that it may be used." 310 N.E.2d at 4. In this case, BIC has conceded, for the purpose of the summary judgment motion, that it was foreseeable that a child of the approximate age of Cori Smith would obtain and operate a BIC lighter. Therefore, children in Cori Smith's age range would appear to be foreseeable users and should at least be considered in applying the consumer-contemplation test. The district court made its analysis under that test only with regard to adults, the ordinary purchasers, and found that adults are capable of contemplating the danger of the lighter's characteristics. The district court should have permitted a jury to consider children, as possible foreseeable users, under the consumer-contemplation test.
 
 
 23
 The district court also concluded as a matter of law that adults are capable of contemplating all of the dangers that the lighter presents. Given plaintiff's claim and support in the record for the proposition that children in the three to five year old age range do not have the self-control, even when warned about the dangers of fire and instructed not to play with matches or lighters, to heed such warnings, and the claim that adults are not aware of this lack of self-control, there is at least a disputed issue of material fact as to whether adults are aware of the full extent of the danger which the lighter presents. Thus, the district court should not have ruled with regard to that factual question as a matter of law. Rather, the district court should have permitted a jury to consider that question.
 
 
 24
 In disposing of plaintiff's claim that the BIC lighter was defective by reason of the inadequacy of the warning, the district court concluded that BIC in fact had no duty to warn at all, as its lighters were not unreasonably dangerous and as any danger which they did pose was obvious. See Taylor v. Gerry's Ridgewood, Inc., 141 Ill.App.3d 780, 95 Ill.Dec. 895, 899, 490 N.E.2d 987, 991 (3 Dist.1986) ("... there is no duty to warn where the product is not defectively designed or manufactured and where the possibility of injury results from a common propensity of the product which is open and obvious.") As there is a disputed issue of material fact as to whether the BIC lighter was unreasonably dangerous and as to whether all the dangers posed by the lighter were obvious, the district court should not have decided as a matter of law that BIC had no duty to warn.
 
 
 25
 BIC, however, did provide the warning, "KEEP OUT OF REACH OF CHILDREN." The question arises as to whether that warning was adequate. The district court determined that it was, reasoning that had the warning on the lighter been heeded, the lighter could have been used safely. In any event, by the determination of the court below, any possible inadequacy of the warning was not a proximate cause of plaintiff's injury. That was so, reasoned the district court, because any additional warnings may not have prevented the accident in this case, since the adults in the Smith/Todd household understood the potential dangers of children playing with lighters and still left the BIC lighter in a place where Cori could easily obtain it. "Where a warning has been communicated, a manufacturer is entitled to assume that the user will read and follow the furnished instructions." Taylor, 95 Ill.Dec. at 900, 490 N.E.2d at 992. However, the warning must still be adequate. "Warnings may be inadequate if they: (1) do not specify the risk presented by the product; (2) are inconsistent with how a product would be used; (3) do not provide the reason for the warnings; or (4) do not reach foreseeable users." Collins v. Sunnyside Corp., 146 Ill.App.3d 78, 100 Ill.Dec. 90, 92, 496 N.E.2d 1155, 1157 (1 Dist.1986). "The adequacy of the warning is usually a jury question." Id. Plaintiff argues that the statement, "KEEP OUT OF REACH OF CHILDREN," does not specify the risks presented by the lighter, namely, that young children may be able to operate the lighter and the special danger that children in the three to five year old range, even when warned about the dangers of fire and instructed not to play with matches or lighters, do not have the self-control to heed such warnings. Plaintiff also contends that the statement does not provide the reasons for the warning. However, "the defendant must have actual or constructive knowledge of the danger before a duty to warn arises." Harnischfeger Corp. v. Gleason Crane Rentals, Inc., 223 Ill.App.3d 444, 165 Ill.Dec. 770, 777, 585 N.E.2d 166, 173 (5 Dist.1991). "A manufacturer is held to the degree of knowledge and skill of experts in the design of its products." Collins v. Interroyal Corp., 126 Ill.App.3d 244, 81 Ill.Dec. 389, 398, 466 N.E.2d 1191, 1200 (1 Dist.1984). Plaintiff claims that BIC, as the manufacturer of the lighter, knew or should have known of the special danger that children in the three to five year old range, although warned not to, nevertheless often will play with lighters. Plaintiff also asserts that as the ordinary adult is not fully aware of such danger, BIC had a duty to warn of it. See, e.g., Sunnyside, 100 Ill.Dec. at 92, 496 N.E.2d at 1157 ("The purpose of a warning is to apprise a person of a danger of which he is not aware, and thus enable the person to protect himself against it.") Furthermore, if a jury were to find that the warning was inadequate, the inadequacy may be a proximate cause of the injury in this case, as, had BIC warned of the special danger regarding children in the three to five year old range, the adults in the Smith/Todd household may have been more careful concerning where they left the lighter. Thus, as there are disputed issues of material fact as to the obviousness of the danger that children in the three to five year old age range will play with lighters though warned not to so play and as to the adequacy of the warning which BIC provided, the district court should not have granted summary judgment in favor of BIC with respect to those issues.
 
 IV
 
 26
 In a products liability context, a manufacturer is under a nondelegable duty to produce a product which is reasonably safe. Coney v. J.L.G. Industries, Inc., 97 Ill.2d 104, 73 Ill.Dec. 337, 343, 454 N.E.2d 197, 203 (1983). "Thus, the breach of duty is the same in both a negligence and strict products liability claim, but the key distinction between a negligence claim and a strict liability claim lies in the fault concept. In a negligence claim, the focus is on the fault of the defendant. In a strict products claim, the focus is on the condition of the product, regardless of fault." Phillips v. U.S. Waco Corp., 163 Ill.App.3d 410, 114 Ill.Dec. 515, 519, 516 N.E.2d 670, 674 (1 Dist.1987). Since the district court determined under its strict liability analysis that BIC did not have a duty to manufacture its lighters with child-resistant features or to give additional warnings, it also granted summary judgment to BIC as to the negligence claims. As we now conclude that there are disputed issues of material fact as to BIC's duty to manufacture its lighters with child-resistant features and as to the adequacy of the warning, we hold that grant of summary judgment on the negligence claims was error.
 
 V
 
 27
 Given BIC's concession that a safe alternative to its lighter, with child-resistant features, was feasible, the failure of the district court to apply the risk-utility test was error. Under that test, there are disputed issues of material fact as to the weighing of the risks and benefits of the BIC lighter. Further, the district court did not fully correctly apply the consumer-contemplation test, since it did not include children as foreseeable users in its analysis. Under the consumer-contemplation test, there is a disputed issue of material fact as to whether adults fully contemplate all the dangers presented by the BIC lighter. In addition, there are other disputed issues of material fact as to the adequacy of the warning which BIC provided. For the foregoing reasons, the district court should not have granted summary judgment in favor of BIC in connection with plaintiff's strict liability or negligence claims. The decision of the lower court is therefore REVERSED and this case is REMANDED for further proceedings consistent with this opinion.
 
 
 28
 MANION, Circuit Judge, dissenting.
 
 
 29
 I agree with the district court's application of the consumer contemplation test, its refusal to apply the risk-utility test, its conclusion that the warning "KEEP OUT OF REACH OF CHILDREN" was adequate as a matter of law, and its conclusion that BIC was not negligent. Therefore, I respectfully dissent from the court's opinion reversing the district court.
 
 
 30
 First, I disagree with this court that under the consumer contemplation test "there is at least a disputed issue of material fact as to whether adults are aware of the full extent of the danger which the lighter presents." (p. 1341) As a matter of law, adults are fully aware that a lighter in the hands of a child is dangerous. Cf. Killeen v. Harmon Grain Products, Inc., 11 Mass.App.Ct. 20, 413 N.E.2d 767, 770 (1980). And even though the most imaginative adults are not "fully aware" of all the horrors which accompany burn injuries, this does not detract from their general knowledge of the danger of lighters. The Todds and the Smiths certainly knew about the danger of lighters; they were given a loud and clear warning that a lighter in the hands of a child is extremely dangerous. About a week before the fire which caused Tiffany's death, Cori Smith had used a lighter to start a small fire in her parents' bedroom. In that instance, however, tragedy was avoided, and the parents reproached her and the other children about the dangers of lighters. Therefore, the inherent danger of lighters was not beyond the parents' contemplation. Nor are such dangers beyond the contemplation of most people who know to keep lighters from children.
 
 
 31
 The court also posits that when applying the consumer contemplation test, courts should consider not only what is possible in the contemplation of the foreseeable purchaser but also the foreseeable user. In this case, that standard requires that BIC's liability should be gauged according to whether the product performed in a manner consistent with the expectations of ordinary four-year-olds. It is unrealistic to require a manufacturer to consider the reasonable expectations of young children when marketing products. Young children lack a capacity for reason, and certainly lack expectations concerning consumer products. The standard proposed by the court effectively mandates that all products with a degree of danger imperceptible to young children are "unreasonably dangerous" when it is foreseeable that they might get their hands on them. No manufacturer should be held to such an unreasonable standard.
 
 
 32
 Next, I take issue with the court's application of the risk-utility test. There are certain products which, though simple in design, pose obvious dangers. A knife is such a product; so is a lighter. To what extent should the law protect users of these products? Should we allow a jury to decide, for instance, whether a permanent retractable sheath should be required for an ordinary kitchen knife? I believe Illinois would apply the principle stated in Scoby v. Vulcan-Hart Corp., 211 Ill.App.3d 106, 155 Ill.Dec. 536, 540, 569 N.E.2d 1147, 1151 (1991), which recognized that "[m]any manufactured products have a potential to cause substantial injury, and most can be made safer by a different design." Id. 155 Ill.Dec. at 540, 569 N.E.2d at 1151. That court went on to refuse to apply the risk-utility test to a manufacturer's failure to provide a cover for a kitchen fryer:
 
 
 33
 We do not deem that Lamkin or other cases applying aspects of a danger-utility test intend that all manufacturers of products described above should be subject to liability depending on a trier of fact's balancing under that test, when suit is brought by one injured by such a product. Somewhere, a line must be drawn beyond which the danger-utility test cannot be applied. Considering not only the obvious nature of any danger here but, also, the simple nature of the mechanism involved, we conclude the circuit court properly applied only the consumer-user contemplation test. Under that test, summary judgment for the defendant was clearly proper.
 
 
 34
 Id. Scoby is our best source to predict whether Illinois would apply the risk-utility test to a simple but obviously dangerous product, such as a lighter. Under Scoby, the risk-utility test should not be applied.
 
 
 35
 Finally, I disagree that there is a question of fact as to whether the warning "KEEP OUT OF REACH OF CHILDREN" failed to adequately warn that the product should be kept out of the reach of children. As a matter of law, this warning specified the risk presented by the lighter: that it was dangerous in the hands of children. The court speculates that a legally sufficient warning might include an admonition stating the dire consequences if the warning were not heeded. I challenge anybody to draft such a warning, and condense it to fit on the side of a pocket lighter. I wonder if anybody would bother to read such a treatise before lighting a cigarette. (The smoker in this case obviously did not heed the warning already on the cigarette package.) In any event, the message contained in the succinct phrase "KEEP OUT OF REACH OF CHILDREN" adequately states the danger and provides a proper warning as a matter of law. Indeed, had the owner of the lighter heeded the warning, there would not have been an accident.
 
 
 36
 Although the circumstances of this case are tragic, tragedy alone does not warrant our expansion of Illinois strict products liability law. BIC manufactures lighters; they are dangerous when misused. This does not mean a jury should decide BIC's liability for every consequence of misuse. As a matter of law, lighters are not unreasonably dangerous. And because BIC did not breach a duty to consumers by manufacturing an unreasonably dangerous product, the district court also was correct in determining that BIC was not negligent.
 
 
 37
 Before BAUER, Chief Judge, CUMMINGS, CUDAHY, POSNER, COFFEY, FLAUM, EASTERBROOK, RIPPLE, MANION, KANNE, ILANA D. ROVNER, Circuit Judges, KAUFMAN, Senior District Judge*.
 
 ORDER
 
 38
 July 2, 1993.
 
 
 39
 On consideration of the petition for rehearing with suggestion for rehearing en banc filed by defendants-appellees on May 11, 1993, and the response of plaintiff-appellant, a vote of the active members of the Court was requested and a majority of the judges in active service have voted to rehear this case en banc.
 
 
 40
 IT IS ORDERED that rehearing en banc be, and the same is hereby, GRANTED.
 
 
 41
 IT IS FURTHER ORDERED that the opinion entered in this case on April 27, 1993, be, and is hereby, VACATED. This case will be reheard en banc at the convenience of the Court.
 
 
 
 *
 The Honorable Frank A. Kaufman, Senior District Judge for the District of Maryland, is sitting by designation
 
 
 *
 The Honorable Frank A. Kaufman, Senior District Judge for the District of Maryland, sitting by designation, was a member of the original panel but took no part in the vote on the suggestion for rehearing en banc